(No. 67756.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TOMMY NEVITT, Appellee.

*Opinion filed March 29, 1990.*

424

428

430

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and Kent Sinson, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Gordon H. Berry, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Defendant, Tommy Nevitt, was convicted in the circuit court of Cook County for the aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) of three-year-old J.B. and sentenced to 18 years'

imprisonment. On appeal, the appellate court reversed defendant's conviction and remanded the cause for a new trial. The appellate court found that a statement by the alleged victim to his mother was erroneously admitted into evidence, that the trial judge improperly elicited inadmissible testimony from a witness, and that statements made by the prosecutor during closing argument were unduly prejudicial and denied defendant a fair trial. (174 Ill. App. 3d 326.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 308).

The issues for our review are: (1) whether an interval of as much as five hours between an alleged incident of sexual abuse and a three-year-old child's out-of-court declaration to his mother concerning the alleged incident precludes the statement's admission under the excited utterance exception to the hearsay rule despite other indicia of reliability; (2) whether the trial judge committed reversible error by asking certain questions from the bench to a police officer concerning the identity of a suspect during the prosecution's direct examination of the witness; (3) whether certain statements made by the prosecutor to the jury during his closing argument constituted reversible error; (4) whether the trial judge displayed bias in favor of the prosecution and engaged in abusive conduct toward a defense witness, and if so, whether the conduct constituted reversible error; and (5) whether the defendant was denied effective assistance of counsel at trial.

During the morning of August 27, 1984, the alleged victim's mother, Pamela, gave her three-year-old son, J.B., his customary morning bath. While bathing J.B., she checked him from head to toe, including his genital area, for diseases, scratches, and sores, but found nothing out of the ordinary. She then drove him to the Accounters Community Center (Accounters), a child daycare and educational center located two blocks from her

Chicago home. According to her testimony at trial, on arriving at Accounters, she escorted her son to his classroom and placed his hand in the hand of defendant.

Pamela returned to Accounters to pick up her son at approximately 3 p.m. that same day. When she arrived, J.B. was sitting in the lobby with two other children and he appeared to be withdrawn. Pamela's son did not come up to greet her, nor did he say anything to her on the trip home. After they arrived at their second-floor apartment, J.B. did not eat his afternoon snack with his usual enthusiasm. Pamela asked him what was wrong. J.B. blurted out, "Teacher Tony bit my dingdong." He then demonstrated with an object what had occurred earlier that day.

Upset, Pamela summoned her mother, Doris, from the downstairs apartment in which she resided. After they arrived in the kitchen, Pamela explained to Doris what had happened. The women then inspected J.B.'s penis, noticing "a pinkish coloration around the head" about the size of a dime. When Doris touched the boy's penis, he hollered "ouch" and "it's sore."

Pamela called Accounters and spoke with Betty Powell, an employee with whom she had previous contacts. Pamela then walked to Accounters and continued her discussion with Ms. Powell regarding what had happened to her son. During their conversation, Mary Mays, Accounters' director, arrived at the center. After a brief discussion with Pamela, Mays requested that Pamela, Pamela's mother and J.B. meet with her at her office. Mays testified at trial that during the meeting J.B. did not appear withdrawn. According to Mays, the boy exhibited no discomfort when Pamela unzipped J.B.'s pants and touched his penis; he instead sat quietly, playing with a toy Mays had given him. In rebuttal, Pamela and Doris testified that the child's penis was never examined during their visit in Mays' office.

After Pamela, Doris and J.B. returned home from Accounters, Pamela called the child abuse hotline. Youth Officers William Radigan and James Pancer of the Chicago police department were assigned to J.B.'s case. The officers went to the boy's home and spoke with his mother. During their visit, J.B. was withdrawn and would not talk to the officers. Officers Radigan and Pancer then took Pamela and J.B. to the hospital. Although J.B. was examined at the hospital, the results of the examination were not introduced at trial.

On August 28, 1984, the day after the alleged incident, Officers Radigan and Pancer visited Accounters, unsuccessfully attempting to locate defendant. They then traveled to an address incorrectly given to them by employees of Accounters as defendant's home and left their card, with instructions for defendant to call them. Later that day, the officers received a telephone call from defendant and arranged for him to meet them at the police station at 10:30 p.m. When defendant failed to arrive at the scheduled time, the officers contacted defendant by phone and arranged to pick him up at his correct home address and take him to their office.

The officers arrived back at the station with defendant, took him to an interview room, and read him *Miranda* warnings. The officers then asked defendant questions about the reported abuse. Officer Radigan testified that although defendant first denied the allegations, he then stated that he wished to tell the truth and confessed to committing the offense. At trial, the prosecution introduced a statement written by defendant and witnessed by Officers Radigan and Pancer. The statement reads as follows:

"Dated: 8/2/84 [*sic*] Accounters Community Center, 1155 W. 81st. In washroom on first floor, on Monday, August 27th. I took [J.B.] to the washroom and pulled out his penis and began to suck it. ([J.B.], age 3)

I did this on [sic] my own free will."

Officer Radigan then contacted the State's Attorney's office.

Assistant State's Attorney Georgia Buglass soon arrived at the station. After receiving *Miranda* warnings, defendant gave Buglass a detailed oral statement, further describing the events to which he had earlier confessed during his conversation with Officers Radigan and Pancer. Buglass testified at trial that she transcribed the substance of defendant's statement, read it back to him, and had him sign it. His signature was witnessed by Buglass and Pancer. In his statement, defendant recounted that J.B. was already at Accounters when he arrived there at approximately 8:30 a.m. Another program aide, along with two children in addition to the victim, was also present. At approximately 10 a.m., defendant accompanied J.B. to the boys washroom and lifted the child up to the sink so that J.B. could wash his hands. He then placed the victim on the floor, pulled down the child's pants, kneeled down, and placed the boy's penis in his mouth. Defendant recited that the incident took place over a period of one minute. He added that he performed this act because he desired to try something new and figured it would be safe with J.B. The statement concluded with a remark by defendant that the police had treated him well and that they had not threatened him or promised him anything.

As Buglass was leaving the interview room, defendant made another oral statement, in which he explained that he had never had sex with a male before and reiterated that he felt it would be safe to try it with J.B. Buglass recorded this second statement underneath the first. It too was signed by defendant and witnessed by Buglass and Pancer.

On the afternoon of August 29, 1984, Pancer asked J.B. and his mother to come to the police station to identify defendant as the perpetrator. When they arrived, J.B. and Pamela were placed in an interview room with a two-way glass on one wall. As Officer Pancer was leading defendant down the hall, defendant looked into the room in which Pamela and J.B. were seated. Before J.B. had an opportunity to view defendant, defendant pointed to J.B. and said that J.B. was the child he was referring to in his earlier statements.

During pretrial proceedings, the trial judge entertained defendant's motion to suppress the statements given to Officers Radigan and Pancer and Assistant State's Attorney Buglass. Defendant argued that he was never given *Miranda* warnings. He also argued that he never knowingly and intelligently waived those rights. The trial judge heard the testimony of Radigan, Pancer, Buglass and defendant and heard arguments from both sides. The trial judge then denied defendant's motion, ruling that there was no basis in law or in fact to suppress the statements.

On the day scheduled for trial, defendant's counsel, Wayne Berman, announced that attorney Salvatore R. Marzullo would replace him as defendant's attorney. When Marzullo arrived, the trial judge had him file his appearance and Marzullo proceeded to represent defendant. Attorney Berman sat at the defense table throughout the trial and examined two witnesses.

At trial, Pamela testified to the events which occurred on August 27 and 28, 1984, and to J.B.'s statement to her concerning the alleged incident. Doris, Pamela's mother, testified to her examination of J.B. on the afternoon of August 27, 1984, and about her subsequent meeting with Ms. Mays. Officers Radigan and Pancer and Assistant State's Attorney Buglass testified to the details of their investigations of the alleged inci-

dent and recounted the defendant's confessions to the jury. J.B. did not testify.

For the defense, Mary Mays, Accounters' director, testified that defendant was on vacation on the day of the incident. Moreover, according to Mays, the boys washroom was closed on that day so it could be painted. On cross-examination, Mays stated that she did not have all of defendant's time sheets and admitted that those she did have for him contained differing signatures. From the record before us it is not clear whether defendant signed in at Accounters on the day of the incident.

Harry Cox, the maintenance and security man for Accounters, testified that he buzzed defendant in through the security door at Accounters at 2:30 p.m. on August 27, 1984. Cox stated that he had not seen the defendant at Accounters before then on that day. In rebuttal, Cook County Sheriff's Police Officer Greg Bedoe testified that he interviewed Cox in the back of the courtroom on the day of trial. According to Bedoe, Cox stated that he did not remember the day of the incident in particular.

Carolyn Douglas, a teacher's aide at Accounters, testified that she was at work on August 27, 1984, and did not see defendant there at all that day.

Deborah Harvey, defendant's girlfriend, testified that defendant picked her up from school at Olive Harvey College at 1 p.m. on August 27, 1984. She stated that he dropped her off at her home and then returned there approximately an hour later. According to Harvey, defendant stayed with her until 10 or 11 o'clock that night. In rebuttal, Officer Bedoe testified that he had spoken to Ms. Harvey over the phone and she told him defendant did not drop her off at home that day until 4:30 or 5 p.m.

Loretta Brown, investigator for the Department of Children and Family Services, and Youth Officer Gallo-

way testified in rebuttal that Mays had told them during their earlier investigation of the incident that defendant was sometimes alone with the children when he met them early in the morning. In addition, Pamela, Doris, Ms. Brown, and Officers Radigan and Galloway testified that prior to trial Mays had never told them defendant was on vacation the day of the incident.

Defendant did not testify at trial.

The jury found defendant guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) and he was sentenced to 18 years' imprisonment.

Defendant appealed his conviction and sentence. The appellate court reversed the jury's verdict and remanded the cause for a new trial. The appellate court found that the prosecution failed to provide a proper foundation for Pamela's identification of defendant as "Teacher Tony," and held that J.B.'s out-of-court statement to his mother was inadmissible. The appellate court also held that the trial court improperly questioned Officer Radigan, and that the prosecution's closing argument was improper and prejudicial. The appellate court found that the errors, in combination, "resulted in manifest prejudice to defendant." (174 Ill. App. 3d at 341.) The State appeals each of these findings.

Defendant asks this court for cross-relief on several issues also addressed by the appellate court. He contends that the trial and appellate courts erred when they found that the victim's out-of-court statement to his mother met the requirements of the excited utterance exception to the hearsay rule, even though the appellate court found the statement inadmissible on other grounds. Defendant also contends that he was denied a fair trial because the trial judge displayed bias in favor of the prosecution and engaged in abusive conduct toward defense counsel and a defense witness. In addition,

defendant asserts that he was denied effective assistance of counsel at trial.

## I

The State's initial claim of appellate court error and defendant's primary argument for cross-relief center around the admissibility of the statement by J.B. to his mother. At trial, the victim's mother testified that upon returning home from the center, her son seemed withdrawn and did not attack his afternoon snack with his usual vigor. Over defendant's hearsay objection, the trial judge allowed the mother to testify that when she asked the boy what was wrong, he blurted out, "Teacher Tony bit my dingdong." The prosecutor subsequently asked Pamela whom she knew as "Teacher Tony." Without objection by defendant, she replied that "Teacher Tony" was the defendant, Tommy Nevitt.

The appellate court affirmed the trial judge's ruling that the victim's statement was admissible under the excited utterance exception to the hearsay rule. Nevertheless, the appellate court called into question the relevance of the statement and found that it did not inculpate defendant because the prosecution failed to show that defendant was known to J.B. as Teacher Tony. The appellate court noted that the prosecution only asked Pamela whom she knew as Teacher Tony, the answer to which, the court determined, improperly implied to the jury that her son knew defendant by that name. The appellate court noted that the State further failed to provide a proper foundation for Pamela's identification of defendant as Teacher Tony. 174 Ill. App. 3d at 338-39.

The State appeals the appellate court's holding that the child's out-of-court statement was inadmissible because it did not inculpate defendant. The State argues that the mother's identification of the defendant as Teacher Tony was sufficient to render the statement ad-

missible evidence. Defendant contends that the statement was inadmissible absent proof that Pamela had observed J.B. refer to defendant as Teacher Tony.

We do not believe that the State's failure to produce specific evidence that J.B. referred to defendant as Teacher Tony renders the child's out-of-court statement inadmissible. The mother's identification of defendant as Teacher Tony, when combined with the uniqueness of the nickname, the proximity of the time of the child's statement from the time Pamela testified that she had placed her son in defendant's care, and defendant's own confessions and identification of J.B. as the child he referred to when making his inculpatory statements, presented sufficient evidence from which the jury could infer that the child's out-of-court statement to his mother concerning Teacher Tony was a reference to defendant. This was sufficient to render the child's out-of-court statement relevant evidence in defendant's trial (see, *e.g.*, *Marut v. Costello* (1966), 34 Ill. 2d 125, 128 (relevancy established when evidence renders matter in issue more or less probable)).

Defendant argues, however, and the appellate court held, that Pamela's identification of defendant as Teacher Tony was inadmissible because of the State's failure to provide a proper foundation for Pamela's identification of defendant as Teacher Tony. The State responds that defendant's failure to object at trial waived any objection in the appellate court and here relating to the lack of a proper foundation for this testimony. Absent plain error, a proper objection at trial and in a written post-trial motion are necessary to preserve an issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190.) Given defendant's opportunity to cross-examine Pamela and defendant's inculpatory statements, we do not find plain error here. (See 107 Ill. 2d R. 615(a); *People. v. Whitlow* (1982), 89 Ill. 2d 322, 342 (plain error exception

to waiver rule applied only when error is so prejudicial that defendant is deprived of a fair trial).) We therefore conclude that any alleged error in the State's failure to provide a proper foundation for Pamela's identification of defendant as Teacher Tony was waived.

Defendant contends in his claim for cross-relief that the appellate court erred in determining that J.B.'s out-of-court statement was properly admitted under the excited utterance exception to the hearsay rule. Defendant bases his claim on two grounds. First, defendant contends that out-of-court statements by children of tender years in sexual abuse cases cannot be admitted into evidence under the excited utterance exception. Second, he argues, that in any event, J.B.'s statement to his mother does not qualify as an excited utterance or spontaneous declaration.

In support of his argument that statements by children of tender years in criminal sexual assault cases should not be admitted under the excited utterance exception to the hearsay rule, defendant cites the opinion of the appellate court in *People v. Bailey* (1988), 177 Ill. App. 3d 679. In *Bailey,* the appellate court determined that rather than relying on the excited utterance exception in sexual abuse cases, the trial court should instead analyze the admissibility of a minor's out-of-court statement solely under the requirement of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10). 177 Ill. App. 3d at 684.

We find defendant's reliance on the appellate court's decision in *Bailey* misplaced. At the time of defendant's trial, section 115—10 provided that in a prosecution for a sexual act perpetrated upon a child under 12 years of age, testimony regarding the child's complaint of the act to another was admissible in order to corroborate the child's testimony at trial. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.) J.B. did not testify at trial. In *Bailey,* the

court relied on a subsequent amendment to section 115—10 which allows admission of the contents of the child's hearsay statement if certain prerequisites demonstrating reliability are met, even though the child may not testify at trial. See Ill. Rev. Stat. 1987, ch. 38, par. 115—10.

We believe that admission of statements under the excited utterance exception and those statements admitted under the version of section 115—10 in effect at the time of defendant's trial further different purposes. Statements admitted under the excited utterance exception to the hearsay rule are admitted because the contents of the out-of-court statements tend to be reliable. (See *People v. Damen* (1963), 28 Ill. 2d 464, 471.) On the other hand, out-of-court statements admitted under the statute relied on by defendant here serve to demonstrate the reliability of the child's in-court testimony. (See, *e.g.*, *People v. Server* (1986), 148 Ill. App. 3d 888, 900.) Because the two rules serve different functions, we conclude that the legislature did not intend to preclude admission of a statement under the excited utterance exception to the hearsay rule when it enacted the version of section 115—10 applicable here.

Because the present statutory exception to the hearsay rule was not in effect at the time of trial, it is not necessary that we determine whether the current statute preempts the excited utterance doctrine in situations similar to the one presented here.

Defendant also argues that even if the excited utterance doctrine is available here, J.B.'s statement to his mother was inadmissible hearsay evidence that does not qualify as an excited utterance or spontaneous declaration. Defendant argues that the time period between the alleged incident and the child's statement to his mother demonstrates that the declaration was not spontaneous. Defendant points out that the child said nothing to his mother when she picked him up at Accounters, during

the drive home and for a time after they arrived. Defendant also notes that the child made the statement in response to his mother's questioning and that the statement occurred as long as five hours after the alleged incident. Finally, defendant argues that J.B.'s out-of-court statement to his mother is so ambiguous that it cannot be said that the declaration related to the circumstances of the occurrence.

This court has recognized a number of exceptions to the rule prohibiting the admission of hearsay evidence, finding that the statements which fall within the exceptions, and are therefore admissible, demonstrate sufficient guarantees of reliability or trustworthiness despite the inability of an opponent to cross-examine the declarant before the trier of fact. (See, *e.g.*, *People v. Clark* (1972), 52 Ill. 2d 374, 389.) As defendant notes, one of the factors to consider in determining the admissibility of a hearsay statement under the spontaneous declaration exception is the absence of time to fabricate. See *People v. Poland* (1961), 22 Ill. 2d 175, 181.

As defendant points out, the time that elapsed between the incident and the declaration here would generally render the statement inadmissible hearsay. However, given the circumstances present in this case, we find that the trial judge's ruling that three-year-old J.B.'s statement was reliable and within the excited utterance exception to the hearsay rule was not an abuse of discretion. See *People v. Shum* (1987), 117 Ill. 2d 317, 343 ("time factor is an elusive element and will vary with the facts of the case"); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.3, at 552 (4th ed. 1984) ("Lapse of time is but one factor to be considered by the court in reaching an answer [of whether the statement is an excited utterance] in the particular case. Other factors include the nature of the event, the mental

and physical condition of the declarant, and the presence or absence of self-interest").

We believe that the evidence at trial sufficiently demonstrates that the child's statement was the product of the event, rather than the child's deliberation. J.B.'s behavior demonstrated the effect the incident had on the child. Although he usually greeted his mother with outward affection, he was on this occasion quiet and withdrawn. He remained uncharacteristically silent during the two-block drive from Accounters and upon his arrival at home. His unusual behavior continued through the afternoon snack. The first time J.B. had an opportunity to relate the incident to anyone away from the environment in which the incident occurred was when his mother picked him up from the center. Although he said nothing about the incident during the drive to his home, his first statement to his mother related to the incident. At that time, according to his mother, the child was still visibly upset and withdrawn. Under the circumstances here, it is not unreasonable to believe that the mother's question to her three-year-old son, asking him "what's wrong," elicited an unreflected and spontaneous declaration concerning an incident that occurred earlier in the day. (*Cf. People v. Gacho* (1988), 122 Ill. 2d 221, 241 (declaration 6½ hours after occurrence was spontaneous when victim confined in trunk in seriously wounded condition and utterance was given in response to question on first opportunity for victim to speak).) We find no evidence that would explain a motive for the child to fabricate the statement, and the terminology contained in the child's declaration substantiates its reliability. (See *State v. Ryan* (1984), 103 Wash. 2d 165, 691 P.2d 197 (whether language of statement was likely to have been used by a child the age of declarant important in determination of statement's reliability).) That the statement came in response to a question put to him by his mother does not

affect its credibility. The question was not suggestive and only prompted J.B. to speak.

Defendant finally contends that the child's out-of-court statement did not relate to the circumstances of the occurrence, another factor to be considered in determining whether a statement qualifies as an excited utterance. (See *Poland*, 22 Ill. 2d at 181.) Defendant contends that the terms "dingdong" and "Teacher Tony" are at least ambiguous, if not meaningless. However, given defendant's own confessions, combined with the testimony of the mother and grandmother concerning the physical evidence, there is ample circumstantial evidence demonstrating the meaning of the child's declaration in relation to the occurrence. *Cf. People v. Leanord* (1980), 83 Ill. 2d 411, 419 (circumstantial evidence corroborated the existence of a startling event sufficient enough to produce a spontaneous declaration).

## II

The State next appeals the appellate court's finding that the trial judge prejudiced the defendant's case by asking a police officer certain questions during the State's direct examination of the witness. (174 Ill. App. 3d at 340-41.) During the testimony of Officer Radigan, the prosecutor asked Radigan if he was aware of the name of a suspect at the time that he went to the victim's home to investigate the incident. Defense counsel objected to this question, arguing that it would elicit hearsay testimony. The trial court overruled defendant's objection. The witness replied that he was aware of the name of the person who was the suspected offender. The prosecutor then asked the witness what he did after he spoke to the victim. At this point, the trial judge interrupted and asked the prosecutor whether the officer had given the name of the individual whom the police were seeking. The prosecutor responded that the witness had

not identified the suspect and the trial judge asked Officer Radigan the suspect's identity. Officer Radigan answered, "The alleged offender of the incident was named as Tommy Nevitt." Defense counsel once again made a hearsay objection, which the trial court overruled.

Testimony is hearsay if it is an out-of-court statement offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121.) The State contends that the officer's testimony was offered not to prove the truth of the matter asserted but to explain the police officer's further action in the investigation. Because the statement was elicited by the trial judge, and no reason for the question was given, we are unable to determine for what purpose the question was asked.

If the officer's response to the question was elicited for the truth of the matter asserted and therefore hearsay, we do not believe that the trial judge's question to Officer Radigan resulted in reversible error. The admission of hearsay evidence is harmless error where there is no reasonable probability that the jury would have acquitted the defendant absent the hearsay testimony. (See *White*, 134 Ill. App. 3d at 283.) We find no such probability here. The jury had properly before it the child's statement to his mother concerning the incident, the mother's identification of defendant as Teacher Tony, and Pamela's testimony that she called the child abuse hotline. Because the officer revealed no other activity or conversation up to that point which could have been the basis for his knowledge that defendant was suspected as the perpetrator of the crime, the jury could only reasonably assume that this identification was the basis for the officer's testimony. Because defendant had ample opportunity to cross-examine the child's mother about J.B.'s statement to her and her identification of defendant as Teacher Tony, a further reference by another witness to

the identification was harmless here. Moreover, in light of the defendant's confessions to Officers Radigan and Pancer and Assistant State's Attorney Buglass, which were also before the jury during its deliberation, this testimony could not have been a significant basis for defendant's conviction.

## III

The State next contests the appellate court's ruling that the prosecutor made several improper statements to the jury during closing arguments. Before reaching these issues, we note that although the appellate court found that several of the prosecutor's remarks constituted error (174 Ill. App. 3d at 349), defense counsel at trial objected to only one of these statements. Defendant's failure to object at trial waives any error in the proceedings absent a showing of plain error. (*People v. Collins* (1985), 106 Ill. 2d 237, 275; *People v. Jackson* (1981), 84 Ill. 2d 350, 358.) We further note that defendant failed to raise in his post-trial motion for a new trial the one allegedly prejudicial statement to which defense counsel did object, also a requirement for the preservation of an issue for review. (*Enoch*, 122 Ill. 2d at 190.) Therefore, defendant's conviction may be reversed only upon a showing that the alleged errors affect substantial rights or were sufficiently prejudicial to deny the defendant a fair trial. 107 Ill. 2d R. 615(a); *Whitlow*, 89 Ill. 2d at 342.

We first consider the statement of the prosecutor to which defendant's counsel objected. The appellate court found prejudicial the following statement by the prosecution during closing argument:

"But what I'd like to know, Tommy Nevitt supposedly is not at work, well where are all the defense witnesses to tell you where Tommy Nevitt was in the morning?

Did you hear one single witness come in here and tell you where Tommy Nevitt was, from the time he got up in the morning until one o'clock when his girl friend allegedly was with him? Did you hear one person come in here and tell you, I was with Tommy Nevitt? Tommy Nevitt couldn't have done it.

Just like no one from the community center, Accounters Community Center told the police, told anybody, the people from DCFS, that Tommy Nevitt was on vacation.

Don't you think that's a little bit strange? If you run a business, you ran a school, or you ran anything, or even a family member, God forbid, was accused of some sort of incident like this, and you knew that he could not have possibly done it, don't you think that you would be telling the police, you'd be telling the State's Attorney, you'd be telling the papers, you'd be telling the press, you'd be telling everybody you could, if you knew that that person could not have done it?''

Defense counsel objected to this argument on the basis that defendant did not have to prove his innocence. The trial judge overruled defendant's objection.

On appeal, the appellate court held that this statement contained two errors. First, the appellate court found that the State's focus, contained in the first two paragraphs of the excerpted argument, on the absence of alibi witnesses detailing defendant's whereabouts during the time period in which the crime allegedly occurred was improper. Second, it held improper the prosecutor's comment, contained in the last two paragraphs of the excerpted argument, that no one told the police that defendant was on vacation.

We first address the State's arguments concerning the propriety of the appellate court's decision holding improper the prosecutor's reference to the defendant's failure to call witnesses detailing his whereabouts on the morning of the occurrence. As a threshold issue, the State maintains that defense counsel's objection did not

sufficiently preserve the issue for review. As to the propriety of the argument, the State contends that the prosecutor only commented on the strength of the alibi presented by defendant, and not on his failure to present an alibi. The State further argues that even if in isolation the comment was error, the statement was proper here because it was prompted by the remarks of defense counsel in his closing argument.

In *People v. Kubat* (1983), 94 Ill. 2d 437, 498, this court held that "where a defendant injects into the case the name of an alibi witness and then fails to call the witness, the prosecutor may legitimately comment on the lack of such evidence although it may not be relied upon as proof of the charge." However, unlike the defendant in *Kubat*, the defendant here presented no evidence at trial of his whereabouts at the time of the alleged crime nor did he allude to a witness who could document that defendant was at another location. The only witnesses referred to at trial by defendant or the defense witnesses were employees of Accounters who were at the day-care center when the incident allegedly occurred there. Defendant's only reference to an alibi was contained in a pretrial pleading not in evidence; in his discovery answer, defendant stated that he intended to assert at trial that he was not at Accounters but was instead at his residence at the time of, and for some time after, the alleged act. We therefore address whether a prosecutor may legitimately comment on the failure of the defendant to call alibi witnesses when defendant presented no evidence of an alibi or an alibi witness at trial.

Our analysis begins with the State's initial contention that defense counsel's objection did not properly preserve the issue for review. We believe defense counsel's objection that defendant did not have to prove his innocence accurately described the burden the prosecutor's argument attempted to place on defendant. When the

prosecution turned the jury's attention to the absence of witnesses detailing the whereabouts of defendant, though defendant had not injected into the trial the existence of an alibi witness, it focused the jurors' attention on defendant's failure to produce witnesses to prove where he was at the time of the incident, and perhaps indirectly on his failure to testify to his whereabouts at that time.

Defendant therefore contends that the prosecutor's comment violated his constitutional right against self-incrimination because it focused on his failure to testify. However, a defendant's right to remain silent has been violated only when the reference was intended or calculated to direct the jury's attention to his silence. (See *People v. Morgan* (1986), 112 Ill. 2d 111, 133.) We do not find that the prosecutor here intended such an effect or that the comment achieved that result.

We nevertheless find that it was error for the prosecutor to comment on defendant's failure to produce alibi witnesses under the circumstances in this case. A prosecutor has the right to comment on the evidence and the credibility of the witnesses and draw all legitimate inferences from the evidence. (*People v. Bryant* (1983), 94 Ill. 2d 514, 524.) "[I]f it is developed in a trial that a witness exists, presumably under the control of a defendant, who can throw light upon a vital matter, and he is not produced, certainly a jury may fairly consider that fact, and, likewise, counsel would have a legitimate right to comment thereon." (*People v. Williams* (1968), 40 Ill. 2d 522, 528.) However, the prosecutor here went beyond that right and invited the jury to draw an inference that because defendant did not call an alibi witness to explain his whereabouts at the time of the alleged crime, then he must have been at the crime scene. A prosecutor may not comment on the failure of a defendant to produce a witness when there is no evidence that a witness exists.

Such a comment is not based on a reasonable inference from evidence presented and is therefore improper. (See *People v. Beier* (1963), 29 Ill. 2d 511, 517.) Moreover, as previously mentioned, a statement similar to the one made by the prosecutor here may mislead the jury concerning the proper burden of proof.

The State contends that the prosecutor was merely commenting on the strength of defendant's alibi witnesses, rather than his failure to present them. It argues that the prosecutor's comment only went to the credibility of the witnesses who testified on defendant's behalf. We disagree. Defendant attempted at trial to establish that he was not at Accounters during the morning of the day of the incident but was there only for a short period of time that afternoon. Yet the prosecutor's remarks focused not only on the credibility of witnesses called by defendant to establish that he was not at Accounters during the time of the alleged incident, but also on the absence of witnesses to show where the defendant was at that time.

The State also argues that even if the comment in isolation was improper, it was prompted by defense counsel's remark that the prosecution did not call as a witness an employee of Accounters who was present on the day of the incident. We find this argument without merit. Defense counsel's comment only invited a counter-response to the absence of the Accounters employee. (See *People v. Richardson* (1988), 123 Ill. 2d 322, 355.) It did not open the door for comment on the absence of witnesses in general.

Because defendant did not raise the issue in his post-trial motion for a new trial, in order to overcome the waiver rule he must demonstrate "plain errors or defects affecting substantial rights." (107 Ill. 2d R. 308; *Enoch*, 122 Ill. 2d at 190 (issue not raised in post-trial motion is waived).) Plain error results when an error is

so prejudicial that it denies the defendant a fair trial. (*Whitlow,* 89 Ill. 2d at 342.) We do not find plain error here. A reading of the record in its entirety and a consideration of the comment within the context in which it is found require a finding that the remark could not have been a material factor in defendant's conviction. (See *People v. Clark* (1972), 52 Ill. 2d 374, 390.) The jury had before it not only the victim's statement to his mother and the mother's testimony that defendant was known as Teacher Tony, but also several signed confessions in which the defendant stated that he committed the offense. In addition, a police officer testified that, on the afternoon after defendant confessed to committing the crime, defendant pointed at J.B. and stated that J.B. was the boy to whom he was referring when he gave his earlier statements.

The appellate court also found error in the prosecutor's comment that no one from Accounters told the police that defendant was on vacation. (174 Ill. App. 3d at 350.) Defendant contends, and the appellate court held, that the comment was improper because Mays testified that she told the police, including Officer Radigan, that defendant was on vacation on the day of the incident. In rebuttal, Officers Radigan and Galloway testified that during their investigation Mays never told them that defendant was on vacation that day.

Despite Mays' testimony, we find no prosecutorial error. The State is not precluded from arguing this point to the jury merely because Mays testified to the contrary. The prosecution impeached Mays' credibility on cross-examination, and Officers Radigan and Galloway testified that Mays never stated to them during their investigation of the crime that defendant was on vacation on the day of the incident. The prosecution's argument was therefore based upon a reasonable inference from evidence presented and was a proper comment on the

credibility of the witness. See *People v. Terry* (1984), 99 Ill. 2d 508, 517.

The appellate court also found prejudicial the prosecutor's statement to the jury that the victim's mother escorted her son to Accounters and handed him to "Teacher Tony, also known as Tommy Nevitt." (174 Ill. App. 3d at 349.) We find that this comment was also a reasonable inference from properly admitted evidence. (See *Terry*, 99 Ill. 2d at 517.) The victim's mother testified that she knew defendant as "Teacher Tony," evidence we have already determined admissible.

The appellate court next found error in the remarks made by the prosecutor in rebuttal argument that Ms. Mays would be held accountable for the condition of Accounters. (174 Ill. App. 3d at 350.) However, defense counsel in his closing argument prompted the statement by arguing that the State was "putting the day-care center on trial." The prosecutor then responded: "Not right at this moment we're not, but I certainly would love to. *** You heard what a shambles this place is." The prosecutor later in his argument stated that Ms. Mays would be held accountable for the condition of Accounters, the comment on which defendant bases his objection. A defendant may not claim prejudice from comments by the prosecutor which were invited by the earlier argument of the defendant. (See *Richardson*, 123 Ill. 2d at 356.) Because the references to Mays by the prosecutor were prompted by defense counsel's earlier argument that the State was attempting to put the day-care center on trial, defendant may not now complain of the invited comments.

The State next appeals the appellate court's finding that a statement by the prosecutor in closing argument that implied that someone at Accounters identified defendant as Teacher Tony was error. (174 Ill. App. 3d at 349.) The prosecution stated:

"[W]hen the police come in, they come in and they want the information of the offender in this incident, Teacher Tony. Well, whose name do they give him? They give him Tommy Nevitt."

No objection to the statement was made at trial. Because we find nothing in the record to support the argument that someone at Accounters identified defendant as Teacher Tony, the prosecutor's comment was improper. (See *Beier*, 29 Ill. 2d at 517.) However, we do not find that this comment resulted in plain error. In light of the overwhelming evidence demonstrating that defendant committed the crime, the remark did not prejudice defendant so as to deprive him of a fair trial. See *People v. Tiller* (1982), 94 Ill. 2d 303, 321.

## IV

Defendant appeals for cross-relief from the appellate court's finding that the trial court neither displayed bias in favor of the prosecution nor engaged in abusive conduct. (174 Ill. App. 3d at 341-44.) We note that although defendant did not raise any issues concerning the conduct of the trial judge in his post-trial motion, application of the waiver rule is less rigid where the basis for the objection is the trial judge's conduct. *People v. Sprinkle* (1963), 27 Ill. 2d 398, 400-01.

In support of his request for cross-relief, defendant first points to incidents which occurred in the pretrial hearing on defendant's motion to suppress statements. He contends that certain questions the trial judge asked witnesses demonstrate his bias against defendant. During the hearing on the motion to suppress, the trial judge asked witnesses questions concerning defendant's sobriety, whether the assistant State's Attorney properly identified herself, the circumstances surrounding defendant's presence at the police station, the use of any force

against defendant and whether any promises were made to defendant before he confessed.

Generally, a trial judge has discretion to question witnesses in order to elicit truth or clarify issues which seem obscure. (*People v. Wesley* (1959), 18 Ill. 2d 138, 155.) The propriety of each examination depends on the circumstances of the case (*People v. Hopkins* (1963), 29 Ill. 2d 260, 265), and rests largely within the discretion of the trial judge (*People v. Palmer* (1963), 27 Ill. 2d 311, 314). However, this discretion is not unlimited. A judge must be fair and impartial, even when outside the hearing of the jury. *People v. Giacomino* (1932), 347 Ill. 523, 529.

We find here that the trial judge's questioning did not overreach the bounds of fairness and impartiality. (See *Wesley*, 18 Ill. 2d at 155.) Each of these issues was raised by defendant during his testimony and the trial court was required to determine the validity of each allegation before ruling on the defendant's motion to suppress his confessions.

Many of the other allegations of judicial impropriety raised by defendant center around events which occurred during the testimony of Mary Mays. Defendant focuses on the court's allowance of prosecution questions relating to Ms. Mays' religious convictions, tuition subsidies and State audits at Accounters and the center's method of sponsoring, hiring and compensating an employee other than defendant.

Generally, the latitude to be allowed in cross-examination of witnesses rests largely within the discretion of the trial court. (*People v. Gallo* (1973), 54 Ill. 2d 343, 356.) We do not find here that the trial judge abused that discretion or demonstrated bias against defendant by overruling defendant's objections to the questions of which defendant complains. We agree with the appellate court's holding that "the prosecution's cross-examination

of Mays regarding those matters was proper insofar as they showed Mays' interest and bias and impeached her credibility as a competent administrator." (174 Ill. App. 3d at 342 (citing *People v. Gonzalez* (1984), 104 Ill. 2d 332, 337-38).) Although a witness' religious convictions are not admissible for the purposes of impairing or enhancing credibility (see, *e.g.*, *People v. Baseer* (1980), 90 Ill. App. 3d 866, 872), the trial judge did not abuse his discretion when he allowed the prosecution to ask questions relating to Mays' interest in Accounters as a weekly gathering place for her theological lectures. These questions attempted to demonstrate to the jury Mays' bias and interest in protecting Accounters' image and reputation in the community. We note that the trial judge correctly sustained two of defendant's objections to questions by the State relating to Ms. Mays' religious convictions when the prosecution's questioning strayed too far.

In addition, we do not find reversible error in the trial court's repeated admonitions to Mays outside the presence of the jury regarding her evasiveness to questions. During Mays' testimony, the trial judge twice dismissed the jury and admonished Mays to answer the questions put to her by the prosecution. During the second admonition, the trial judge stated:

> "Now, you sat on this witness stand and you stated under oath that you have a college education, that you have certain credentials and so forth and you have shown to me either those credentials are in fact false or there is something you are trying to hide. And I will not tolerate it. Do you understand that?"

Although we do not condone this statement or similar statements made by the trial judge, we believe that the trial judge's comments demonstrated frustration with the witness rather than a bias against defendant. An additional excerpt substantiates our conclusion:

> "And I get that impression by the evasiveness and by your way of answering the questions you are trying to cover up something.
>
> If I take that view, what do you think the jury is doing? If anything, you are hurting your people and you are hurting your particular testimony because they are going to consider your testimony in light of the way you have been evasive and been trying to qualify each one of these questions."

Moreover, there is no evidence that the trial judge's comments, though perhaps improper, prejudiced defendant. (See *Wesley*, 18 Ill. 2d at 156 (judge's comments and questions due to witness' evasiveness improper, but did not deprive defendant of fair and impartial trial).) Both admonitions to which defendant refers occurred outside the presence of the jury.

In addition, defendant complains of the unfairness of the trial judge's repeated pleas to the witness in the presence of the jury to answer the questions by responding "yes" or "no." These admonitions, however, were prompted by the witness' evasiveness and tendency to answer a question with a question. Moreover, defendant had ample opportunity to cure any purported prejudice by asking Ms. Mays to further explain her answers on redirect examination.

Defendant next contends that the trial judge's comment at side bar during which he ruled that J.B.'s mother could testify about J.B.'s statement to her because it was "the opinion of the Court that this victim was not fabricating the story" demonstrated the trial judge's bias against defendant. Initially, we do not find it unreasonable to believe that the judge was commenting on his belief that the declaration was reliable enough to meet the excited utterance exception to the hearsay rule. The comment did not prejudice defendant. The statement was made outside the presence of the jury, and the

jury's verdict was not influenced by the trial judge's comments.

Neither does the trial judge's ruling that defendant could not call Betty Powell to testify show a bias against defendant on the part of the trial judge. After defendant announced his intention to call Ms. Powell, the State asked for a side bar and, outside the presence of the jury, informed the trial judge that Ms. Powell was not listed as a witness on defendant's answer to discovery. Defense counsel responded that Ms. Powell would testify to the "lay of the day care center," that she saw defendant on the day of the incident at approximately 2 p.m., and that she never saw defendant that day with J.B. Defense counsel also indicated that he had never spoken with Ms. Powell. Defendant points to the trial court's response outside the presence of the jury that he would not let defense counsel "get any witness to come in here and make some cock-and-bull story up at the last minute without giving the State an opportunity to examine him," and argues that this comment demonstrates that the trial judge's exclusion of Ms. Powell as a witness was motivated by his bias against defendant.

Although it may be said that the trial judge's comment was ill-advised, we cannot agree that the exclusion of Ms. Powell as a witness demonstrated the trial judge's bias against defendant. Exclusion of the undisclosed witness was a possible sanction (*People v. Partee* (1987), 157 Ill. App. 3d 231, 252), and we do not find Ms. Powell's exclusion an abuse of discretion in light of the circumstances in which defendant attempted to call the witness (see *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646; *People v. Weaver* (1982), 92 Ill. 2d 545, 558-59 (remedy fashioned by trial court for discovery violation given great weight)). Defendant did not disclose Ms. Powell as a possible witness in his answer to the State's discovery request prior

to trial as directed by the trial court pursuant to Supreme Court Rule 413(d) (107 Ill. 2d R. 413(d)). It was not until the third day of trial that defendant requested that he be allowed to call Ms. Powell, an employee of Accounters, as a witness. Defense counsel had ready access to Ms. Powell but had never spoken to her. It is reasonable to assume that defendant had ample opportunity to interview Ms. Powell before filing his list of witnesses with the State, and certainly before the third day of trial. It further appears that the testimony of Ms. Powell would have been cumulative.

Finally, defendant claims that a comment made by the trial judge during closing arguments demonstrated the trial judge's bias against defendant. In response to defendant's objection to the prosecutor's statement concerning the absence of witnesses detailing defendant's whereabouts at the time of the incident, the trial judge stated: "There is no question about proving of innocence, ladies and gentlemen. It is a statement that the State may make with reference to the reasonable inferences to be drawn, and comments which are not unreasonable. And accordingly, I'll overrule your objection." Defendant raises this issue here for the first time and does not contend that the comment constituted plain error. The argument is, therefore, waived and we will not address it. *Enoch*, 122 Ill. 2d at 202.

V

Defendant also renews in his claim for cross-relief the argument first raised in the appellate court that he was denied effective assistance of counsel at trial. Defendant notes that attorney Marzullo did not begin representing him until the first day of the trial; that the name of Renee Dishman as a potential witness was not properly listed on defendant's answer to the State's discovery request; that Marzullo claimed in his opening argument

that hospital records would prove that the victim sustained no injuries, but that the records were never produced; and that Betty Powell was not named as a witness on the discovery list.

In order to demonstrate ineffective assistance of counsel, defendant must show: (1) that the attorney's representation fell below an objective standard of reasonableness and deprived the defendant of a trial whose result is reliable; and (2) that there exists a reasonable probability that the deficient performance of defendant's counsel so prejudiced the proceeding that absent the unprofessional conduct the results would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504.

Even if we were to determine that attorney Marzullo's efforts were deficient in some way, defendant does not demonstrate that he was prejudiced by any of his attorney's actions. Mr. Marzullo's entrance in the case the day of trial does not independently demonstrate prejudice to defendant absent other errors. It is important to note that attorney Berman did not abandon defendant but sat at the defense table throughout the trial, examined two witnesses and contributed to discussions at side bar.

In addition, there exists no evidence in the record that Ms. Dishman's testimony would have impacted the results of the proceeding. Therefore, we cannot find counsel's failure to amend the discovery answer prejudicial to defendant. (See *People v. Wright* (1986), 111 Ill. 2d 18, 31.) Nor does defendant present a compelling argument that the absence of Betty Powell's testimony reasonably affected the results of the trial. As mentioned, it appears that her testimony offered only cumulative evidence and therefore would not have exonerated defendant. *Cf. Wright*, 111 Ill. 2d at 31.

Finally, as the appellate court noted, the absence of medical testimony was not fatal to defendant's case. (174 Ill. App. 3d at 346.) Even if the medical evidence demonstrated that the child suffered no sustained physical injury, it would not contradict the testimony of the victim's mother and grandmother that the boy's penis appeared red and sore immediately after his mother picked him up from Accounters.

For the reasons indicated, we reverse the appellate court's finding that the three-year-old victim's declaration to his mother concerning the alleged occurrence was inadmissible. We find harmless the trial judge's questions to a police officer concerning the identity of a suspect during direct examination by the prosecution, even if the questions elicited hearsay testimony. Similarly, although we find improper certain statements made by the prosecutor to the jury during his closing argument, we do not find these arguments so prejudicial as to deny defendant a fair trial. Finally, we uphold the appellate court's determination that the trial court did not display bias in favor of the prosecution and that defendant was not denied effective assistance of counsel. Because we do not believe that the trial errors discussed here, alone or in combination, resulted in manifest prejudice to defendant, we reverse the judgment of the appellate court and affirm the judgment of the trial court.

Because the appellate court reversed defendant's conviction, it did not address defendant's argument that his 18-year sentence was excessive (174 Ill. App. 3d at 350). We therefore remand this cause to the appellate court for consideration of that question.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded with directions.*