THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN BOLAND, Defendant-Appellant.

First District (1st Division)   No. 1—88—1900

Opinion filed November 5, 1990.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Elizabeth Sklarsky, Special Assistant State's Attorney, and Renee Goldfarb and Anne C. Scrivner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant was convicted of aggravated criminal sexual assault and aggravated criminal sexual abuse. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(2), 12—16(d).) The court sentenced defendant to 16 years' imprisonment, followed by three years of mandatory supervised release. Defendant appeals on the grounds that: (1) his rights under the fifth, sixth and fourteenth amendments to the United States Constitution were violated by the denial of a continuance at trial; (2) the prosecutor improperly commented on the element of bodily harm in closing argument; (3) the sentence is excessive; and (4) the indictment was fatally defective regarding the mental state for the crimes charged. We affirm.

The complaining witness, M.R., age 13, testified that she was born on April 6, 1974. She left her house at about 4 p.m. on May 11, 1987, to pay a bill for her mother. On her way back home, she was grabbed from behind by the upper arms. Turning her head, she could see the person grabbing her was a man (later identified as defendant) whom she had known on a very casual basis for about 2½ years.

Defendant dragged complainant across the street and released her

several houses into an alley. A garage stood inches behind complainant, and defendant stood a few inches in front of her.

Defendant pulled complainant's shorts and panties to her knees. He then knocked her to the ground. Complainant's arms were pinned behind her. She yelled at defendant to leave her alone, but did not run away because defendant held her shoulders. Defendant then unzipped his pants and got on top of complainant. He took his penis out of his pants and placed it inside her vagina. He then lay on top of her as she continued to protest. Defendant laughed most of the time.

After a few minutes, defendant got up and left. Complainant put her pants on and went to her aunt's nearby home because her mother would still be at work. After hearing what happened, complainant's aunt (Laura), called complainant's mother (Gloria) and then took complainant home. Complainant told Gloria what happened. Gloria called the police about an hour later. After the police arrived and spoke with complainant, they returned with her to the alley so that she could identify the area. The police then patrolled the area with complainant, looking unsuccessfully for defendant. Later, the officers took complainant to the hospital, where she was examined.

Laura testified in corroboration of complainant's testimony that on May 11, 1987, at about 5 p.m., her niece came to the house. She testified that her niece was crying, had bruises on both arms, a red face and dirt on the back of her clothes. The niece told Laura what happened and asked her to call Gloria, which she did. Laura took complainant to Gloria's home and then left.

Gloria then testified in corroboration of complainant's testimony. The mother testified that on the date in question, at about 5:30 p.m., she received a phone call from Laura. Shortly thereafter, complainant arrived home, with dirty clothes, scratches on at least one arm and a reddened face. Gloria spoke with complainant, but did not call the police for one hour because she initially did not want her daughter to go through an investigation or trial.

Officer Jeffrey Johnson testified that he went to complainant's home at about 6:55 p.m. on May 11, 1987. After noting complainant's physical appearance and speaking with her, they went to the alley, toured the area to look for defendant and went to the hospital. Detective George Patton testified that he met with complainant at the hospital on the evening of May 11. He observed her physical and emotional state. As a result of speaking with complainant, he was able to obtain a photograph of a person who was identified as defendant by complainant on May 12, 1987. Defendant was then taken into custody and identified by complainant in a one-on-one showup.

It was later stipulated that defendant was born on February 18, 1969, making defendant more than five years older than complainant. Finally, Dr. Neal Winston testified about his examination of complainant at the hospital. He noted her age and the condition of her clothing. He then noted bruises and sets of parallel scratch marks on both of her forearms, pressure marks on her face and pain in the superpubic areas of her body. A gynecological examination revealed a slight reddening of the labia, which would be consistent with sexual penetration. A urinalysis ruled out infection as a possible cause of the reddening. Samples were taken for a Vitullo kit.

The State rested its case in the morning. The record does not reflect the exact time. Defense counsel moved to recess until 2 p.m. so that a witness, Jessica Risa, could arrive to testify. The trial court recessed until 2:05 p.m. Defense counsel then moved to recess until 2:30 p.m. because its investigator had not yet arrived with the witness. After hearing that defense counsel was unsure of the witness' exact testimony and that the witness was not currently under subpoena, the court denied the continuance. Defendant was the only other witness for the defense. Defense counsel stated that he did not believe that defendant could knowledgeably exercise his right to testify until after the witness testified. Nevertheless, the trial proceeded.

Defendant testified that on May 11, 1987, he was with a friend at the corner of 89th and Exchange from 4 p.m. until about 4:15 or 4:30 p.m., when he rode a bike down Commercial. He saw Jessica Risa during the bike ride. He then returned to 89th and Exchange at 5 p.m., where he remained until about 7 p.m. Defendant further testified that he knew complainant on a "hi and bye" basis, but did not see, grab or have intercourse with her on May 11. He also denied knowing the identity of the complainant at the time of his arrest.

On cross-examination, defendant testified that he had spoken about the case to Assistant State's Attorney Nick Trutenko, but did not remember if he mentioned the bike ride. The State later called Nick Trutenko as a rebuttal witness to testify that defendant had told him that defendant was at the corner of 89th and Exchange from about 3:45 to 5 p.m. and that defendant had never seen complainant before the one-on-one showup. In rebuttal testimony, defendant testified that he believed Detective Patton would lie on the stand, but could offer no reason for his belief.

After defendant's testimony, the trial court granted defense counsel's request for a brief recess. Jessisa Risa then testified that she saw defendant riding his bike at 91st and Commercial at some time between 4:15 and 4:30 p.m. on the date in question. Ms. Risa testified

that she remembered this event after hearing about defendant's arrest from a friend. On cross-examination, however, Ms. Risa testified that she could not say under oath that she saw defendant on May 11, 1987.

Following a stipulation of defendant's prior conviction for robbery, rebuttal testimony and closing arguments, the court denied defendant's motion for a mistrial. The jury found defendant guilty of aggravated criminal sexual assault and aggravated criminal sexual abuse. At the sentencing hearing, the court imposed a sentence of 16 years of imprisonment and three years of mandatory supervised release, to run consecutive to a previously imposed sentence for robbery.

The first issue on appeal is whether defendant's rights under the fifth and sixth amendments to the Constitution of the United States were violated by the denial of a continuance during trial. Defendant contends that forcing defendant to testify before hearing Ms. Risa's testimony violated his right to wait until all of the defense testimony has been presented to decide whether to testify. See *Brooks v. Tennessee* (1972), 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891.

■ Defendant has waived this issue on appeal by failing to raise it in his written post-trial motion for a new trial. (*E.g., People v. Nevitt* (1990), 135 Ill. 2d 423, 441, 553 N.E.2d 368, 374.) Defendant's motion for a new trial asserts 15 grounds for a new trial, but the denial of the continuance is not among them. The only assertion that relates to the alleged error is number 3, "The defendant was denied due process of law." Standing alone, this assertion is too general to have notified the trial court of the alleged error regarding the continuance. (*People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1021-22, 540 N.E.2d 981, 984-85; *People v. Nunez* (1974), 24 Ill. App. 3d 163, 169-70, 320 N.E.2d 462, 467.) Therefore, the issue is waived.

■ Nor was the denial of the continuance plain error justifying a departure from the general waiver rule. (*E.g., People v. Nevitt* (1990), 135 Ill. 2d 423, 448, 553 N.E.2d 368, 377-78.) The grant or denial of a continuance rests within the sound discretion of the trial court, and its ruling will not be reversed on appeal in the absence of a clear abuse of that discretion. (*People v. Collins* (1985), 106 Ill. 2d 237, 281, 478 N.E.2d 267, 287, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) In reviewing the denial of a continuance sought to secure the presence of a witness, this court will consider whether: (1) defendant was diligent; (2) the witness' testimony was material and might have affected the verdict; and (3) defendant was prejudiced in his rights. *People v. Timms* (1978), 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321, 1325.

First, there is the question of defendant's diligence in attempting

to secure his witness for trial. Although Ms. Risa had been under subpoena for previously scheduled trial dates, she was not under subpoena on the actual date of trial. Failure to subpoena a witness suggests a lack of diligence, unless counsel has a reasonable expectation that the witness will appear without a subpoena and the witness is delayed by last-minute events. (*Timms*, 59 Ill. App. 3d at 135, 375 N.E.2d at 1325.) Here, the record reflects defense counsel's belief that Ms. Risa would appear without a subpoena and that Ms. Risa was delayed because she was suddenly without a ride to court. Yet the record also reflects that defendant had the entire morning session and a recess granted by the trial court to secure the witness' presence in court, leaving defendant's diligence open to doubt.

Second, the witness' testimony must be material and might affect the verdict. Defendant believed that Ms. Risa could corroborate his alibi; direct corroboration of a defendant's alibi is material (*Timms*, 59 Ill. App. 3d at 136, 375 N.E.2d at 1326.) Whether Ms. Risa's testimony was in fact material is open to question because she could not say under oath that she had seen defendant on the day of the offense.

Then there is the issue of whether the order of the testimony might have affected the verdict. Defendant argues that he would not have testified "without substantial corroboration." To do so was to cause the jury to observe the impeachment of defendant by at least two prior inconsistent statements and a prior conviction, as well as to hear defendant's unsupported characterization of Detective Patton's honesty.

If the continuance had been granted and defendant had elected not to testify, then the jury would have already heard the complainant's testimony, which was clear and convincing. This testimony was corroborated by the complainant's mother, aunt and Officer Johnson. The jury would also have heard the testimony of Detective Patton regarding the identification and arrest of defendant, as well as the expert testimony of complainant's treating physician that complainant's injuries were consistent with sexual penetration and a struggle. Finally, the jury would have heard a defense witness who could not testify that she saw defendant on May 11, 1987. There was ample support in the record to support a guilty verdict. (See, *e.g., People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367, *cert. denied* (1989), 489 U.S. 1085, 103 L. Ed. 2d 848, 109 S. Ct. 1544; *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131.) Therefore, defendant has failed to demonstrate that the denial of the continuance would have affected the outcome of the trial.

■■ ■ Finally, there is the question of whether defendant's rights were prejudiced. A criminal defendant cannot be forced to choose whether to testify before all of the other defense evidence has been presented. (See *Brooks v. Tennessee* (1972), 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891.) The denial of a criminal defendant's fifth amendment rights is automatically reversible error unless the error is harmless beyond a reasonable doubt. (*United States v. Hasting* (1983), 461 U.S. 499, 76 L. Ed. 2d 96, 103 S. Ct. 1974; *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut* (1963), 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230; see *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132.

We are not persuaded that defendant was required to choose whether to testify. Defendant has therefore failed to show that his constitutional rights were prejudiced. Consequently, the trial court did not err in denying the defense a second continuance.

Defendant's second argument is that remarks made by the State in rebuttal closing argument denied him a fair trial. Specifically, he contends that it was improper for the prosecutor to argue that the bruises and scratches on complainant's arms were bodily harm, "by law."

■ Defendant has waived this issue by failing to raise it in his written post-trial motion for a new trial. (*E.g., People v. Nevitt* (1990), 135 Ill. 2d 423, 441, 553 N.E.2d 368, 374.) The only ground asserted in the motion that relates to the alleged error is number 14:

> "The Assistant State's Attorney made prejudicial, inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury, thereby prejudicing the defendant's right to a fair trial."

An identical allegation was held to be too vague in *People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1021-22, 540 N.E.2d 981, 986-87. Consequently, the issue is waived in this case.

Assuming, *arguendo*, that the issue had not been waived, there was no error in the prosecutor's comment. The Illinois Supreme Court has repeatedly noted that attorneys are granted "considerable leeway" in their closing and rebuttal arguments. Thus, a reviewing court will accord the trial court every reasonable presumption in the exercise of its discretion concerning argument to the jury. (*E.g., People v. Simms* (1988), 121 Ill. 2d 259, 269, 520 N.E.2d 308, 312.) It is reasonable to presume that the trial court was acquainted with the law regarding the element of bodily harm, which involves "some sort of physical pain or damage to the body, [such as] lacerations, bruises or abrasions, whether

temporary or permanent." (*People v. Haywood* (1987), 118 Ill. 2d 263, 276, 515 N.E.2d 45, 51, quoting *People v. Mays* (1982), 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36.) Given the evidence of complainant's scratches, bruises and pain, the trial court's ruling allowing argument on bodily harm was not an abuse of its discretion.

Defendant's third argument is that his sentence is excessive for a teenager of his background. The State contends that defendant has waived this issue by failing to raise it in his written post-trial motion for a new trial, citing *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1130-31, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

The sentencing issue was not raised by defendant's post-trial motion for a new trial. We therefore find that defendant has waived the issue.

In any event, our supreme court has often stated that appellate courts are not sentencing courts, and the sentence of a trial court will be affirmed absent a clear abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 547; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.

■ In sentencing a defendant, the trial court may consider the gravity and circumstances of the offense, as well as defendant's mental capacity, age, demeanor and credibility. (*E.g., Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) The trial court must also balance the protection of society with the objective of rehabilitating defendant. (See *People v. Harris* (1989), 187 Ill. App. 3d 832, 844, 543 N.E.2d 859, 866.) Once struck, an appellate court will be loathe to upset this balance, particularly where the sentence falls within the statutory limitation. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641, 649.

Aggravated criminal sexual assault is a Class X felony (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(c)), with a statutory prison term of not less than six years and not more than 30 years as mandated by the Uniform Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(3)). The trial court's sentence was thus within statutory limits.

■ A review of the record of the sentencing hearing indicates that the trial court considered all of the mitigating and aggravating factors presented by counsel and in the presentence investigation report prior to sentencing defendant, in conformity with the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). Mitigating factors included defendant's age and stressful family situation, as well as the fact that defendant had never been imprisoned. Aggravating factors included the severity of the offense, the age of the complainant, and defendant's prior history, which consisted of a juve-

nile finding of delinquency, juvenile sentences of probation for auto theft and robbery, and adult convictions for misdemeanor attempted theft and robbery. The offense at bar was committed while defendant was on bond pending trial for the latter offense. The trial court, having weighed these factors, did not abuse its discretion.

Defendant's final argument is that the failure to specify a mental state in his indictment is a fatal defect mandating reversal of his conviction. See, *e.g., People v. Grant* (1981), 101 Ill. App. 3d 43, 46, 427 N.E.2d 810, 813.

■ The State again raises the issue of waiver. Defendant did not raise this issue in the written post-trial motion for a new trial, thus waiving the issue here. *E.g., People v. Nevitt* (1990), 135 Ill. 2d 423, 441, 553 N.E.2d 368, 374.

Even if the issue had been raised in the written post-trial motion for a new trial, defendant's pre-trial motion to dismiss the charge was not based on a failure to specify the mental state, thus waiving the argument. (*People v. Peebles* (1984), 125 Ill. App. 3d 213, 221, 465 N.E.2d 539, 545.) The sufficiency of the indictment would then be judged by whether it gave defendant sufficient notice of "the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460.

Aggravated criminal sexual assault is a general intent crime not requiring the allegation of a specific mental state. Consequently, an indictment for this offense is not defective for failing to allege a mental state. See *People v. Leonard* (1988), 171 Ill. App. 3d 380, 384, 526 N.E.2d 397, 399-400, *cert. denied* (1989), 490 U.S. 1008, 104 L. Ed. 2d 162, 109 S. Ct. 1647.

For the aforementioned reasons, the judgment of the trial court is affirmed, with costs of $75 to be awarded to the State under *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.