(No. 51695

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STANLEY TYLER, Appellee.

*Opinion filed November 21, 1979.—Rehearing denied February 1, 1980.*

William J. Scott, Attorney General, of Springfield, and Thomas J. Fahey, State's Attorney, of Danville (Donald B. Mackay, Melbourne A. Noel, Jr., and William M. Wippold, Assistant Attorneys General, of Chicago, and Marc D. Towler and Robert J. Biderman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Richard J. Wilson, Deputy Defender, and Daniel Yuhas, Assistant Defender, of the Office of the State Appellate Defender, of Springfield (Janet Sinder, law student, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Vermilion County defendant, Stanley Tyler, was convicted of rape and armed robbery and sentenced to the penitentiary for concurrent terms of not less than 8 nor more than 16 years. The appellate court reversed the rape conviction and remanded the cause for resentencing for the armed robbery. (66 Ill. App. 3d 1017.) We allowed the People's petition for leave to appeal. In reversing the judgment the appellate court held that defendant was not accountable for the rape for the reason that there was insufficient evidence to prove beyond a reasonable doubt that he intended to promote or facilitate the rape. 66 Ill. App. 3d 1017, 1019.

At approximately 4:30 p.m. defendant, Johnny Wilson, and Kevin Taylor approached a residence at the end of a secluded road in Vermilion County. They parked their automobile approximately 1½ blocks from the house; Wilson removed a loaded shotgun from the trunk, and after loading a rifle, handed it to defendant. Each of the three men placed a stocking mask over his head.

They walked toward the residence and upon encountering the complainant toward the rear of the house, Wilson announced, "This is a stick up." She did not resist, and she, Wilson, and defendant entered the house. Kevin Taylor entered the house several minutes later.

The complainant testified that the man with the shotgun followed her into the living room of the house, then searched the billfold of her purse. He ordered her to walk down the hallway toward the back of the house to the master bedroom, and shortly after they entered the master bedroom he forced her to submit to an act of sexual intercourse. Taylor testified that when he entered the house defendant was in the living room. He asked where Wilson was, and defendant, indicating the bedroom, replied that he "went back there." Taylor went to the bedroom and, as he looked into the room, saw Wilson and the complainant dressing. Taylor testified that defendant warned that an automobile had pulled into the driveway of the complainant's home and the three men fled.

A typewritten statement, signed by defendant, admitted into evidence, reads in part:

"Q. When you got to this house what happened?

A. We were in the woods and then the dog came down and the lady came behind him, then Johnny put the gun on this lady, and Johnny told her to get the dog. Johnny and her then walked up to the house, and Kevin followed them and I went around to the back of the house. I waited for 2 or 3 minutes and Johnny came and let us in. Johnny and Kevin and this lady were in the front room talking and then Johnny took this lady back to the bedroom, and so Kevin stayed in the front room.

Q. While you and Kevin were in the front room what was Johnny doing?

A. I think he was raping her.

Q. Why do you think this?

A. When Johnny took her back there he closed the door and I could hear her mumbling something. Kevin went back there to see what he was doing. Johnny and the lady were pulling up their clothes."

Dennis Hailey, an investigator for the Vermilion County Criminal Investigation Team who took the statement from defendant, testified that defendant also said that when Wilson took the complainant into the bedroom "he heard some moaning and groaning in the bedroom."

The circuit court found that defendant was accountable for the rape.

The People contend that in reversing the conviction for rape the appellate court erroneously substituted its factual determination for that of the circuit court. Citing *People v. Richardson* (1965), 32 Ill. 2d 472, the People argue that "the fact that the criminal acts were not committed pursuant to a pre-conceived plan is not a defense if the evidence indicates involvement by the defendant in the spontaneous acts of the group." It is the defendant's position that the conviction was properly reversed because there was no evidence to prove that he possessed the specific intent required to sustain a conviction under the theory or accountability. Section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2) provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

Although defendant's mere presence at the complainant's home is not sufficient to render him accountable, it is not necessary to prove that he participated in the commission of the act which constituted the offense.

(*People v. Kessler* (1974), 57 Ill. 2d 493.) The evidence is sufficient to sustain the conviction if there is proof of the required intent and that defendant aided, abetted, or attempted to aid Wilson in the perpetration of the crime. The transcript of the proceedings at the trial shows that the circuit court concluded that when Wilson took the complainant to the bedroom, defendant "knew perfectly well what was happening." He did nothing to disassociate himself from the occurrence and gave the alarm when an automobile approached the house. The evidence supports the judgment, and in reversing the conviction for rape the appellate court erred. We have considered defendant's argument that the sentence imposed is excessive and do not agree. Insofar as the appellate court reversed the conviction for rape and remanded the cause for resentence, its judgment is reversed, and in all other respects its judgment is affirmed. The judgment of the circuit court is affirmed.

*Appellate court affirmed in*
*part and reversed in part;*
*circuit court affirmed.*