THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERIC HOSKINS *et al.*, Defendants-Appellants.

First District (6th Division) Nos. 1—89—0050, 1—89—0158 cons.

Opinion filed September 7, 1990.

Randolph N. Stone, Public Defender, of Chicago (Mark Floyd Pasterski, Assistant Public Defender, of counsel), for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Jeanette Sublett, and Elizabeth A. McDevitt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendants, Eric Hoskins and Gary McWilliams, each were found guilty of two counts of aggravated criminal sexual assault. Hoskins was sentenced to 25 years' imprisonment, and McWilliams was sentenced to eight years' imprisonment. In their consolidated appeal, defendants contend that they were not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault because complainant consented to sexual intercourse with them.

Additionally, McWilliams contends that the trial court improperly used an accountability theory to find him guilty of the aggravated criminal sexual assault committed by Hoskins, as charged in count VII of the indictment. Similarly, Hoskins contends that the trial court improperly held him accountable for the acts of aggravated criminal sexual assault committed by McWilliams, as charged in count I of the indictment.

The pertinent facts are as follows. Complainant testified that on October 30, 1987, she was with her two children, her friend, Geneva, and Geneva's two children. At approximately 11:45 p.m., complainant dropped her children off at her house and she, Geneva, and Geneva's children proceeded to Geneva's house. Complainant waited outside while Geneva put her children to bed.

While complainant was waiting, a man approached and asked her for a match. She replied that she did not have one. Complainant did not know the man prior to that evening. It later was determined that his name was Briscoll. (Briscoll is not involved in this appeal.) Complainant believed Briscoll had walked away, but he came around her, grabbed her arm, covered her mouth, and pulled her into a building on the corner of 76th and Union Streets. Briscoll pulled complainant through the front door and down into the basement. Complainant screamed as he did so.

Briscoll pulled her into a bedroom and began to hit her. He ordered her to take her clothes off, and when she refused to do so, he hit her and pulled her hair. Complainant took her clothes off, but Briscoll continued to hit her. Briscoll pulled complainant onto the bed and forced her to perform oral copulation. Complainant was crying.

At this point, Hoskins entered the room. Hoskins took his clothes off and slapped complainant down onto the bed. He hit her on the face and put his penis into her mouth. Hoskins then forced complainant to have vaginal intercourse with him. Complainant screamed and cried during this time. Hoskins and Briscoll told her to shut up. When she failed to do so, both men beat her with a belt. They struck her on her back, her arms and her legs. They gagged her with a scarf and tied her hands behind her back with socks. Throughout this time, Hoskins and Briscoll were getting high and drinking beer. They poured beer over complainant's head and blew cocaine smoke into her face.

McWilliams entered the room and asked Briscoll and Hoskins what they had. Briscoll asked McWilliams if he "want[ed] some." McWilliams threw the complainant onto the bed and hit her. He then forced her to have vaginal intercourse. Complainant stated that she

begged him to stop and to help her.

After this episode, she was allowed to put on a shirt. Hoskins and Briscoll took her upstairs to the front room. There were five men present in the room, McWilliams, Hoskins, Briscoll, Black and Jones. Briscoll hit complainant again, and forced her to perform oral copulation. The four other men watched and laughed. When Briscoll finished, Hoskins took complainant to a downstairs bedroom. Briscoll entered the room, pulled the complainant into the hallway and again forced her to perform oral copulation.

McWilliams came downstairs. Complainant testified that he pulled her head back, stood her up and opened the door to a room. Complainant told him that she would not enter the room, but Briscoll forced her to do so. McWilliams pushed her down onto the bed and told her to lie down. McWilliams got on top of complainant and forced her to have vaginal intercourse. While he was doing so, Briscoll again forced her to perform oral copulation. McWilliams then left the room.

In the back bedroom the following morning, Briscoll forced complainant to perform oral copulation. Complainant then was allowed to dress, and Briscoll took her to Hoskins' room. Hoskins held complainant in his room while Briscoll escaped. Hoskins held complainant for approximately 30 minutes and then released her. Complainant stated that after her release, she walked to her home. She immediately told her fiance, William Rutledge, and he so testified, that she had been raped and told him where it occurred. Rutledge helped her to the bathtub. When she got into the tub, she and Rutledge noticed bruises all over her shoulders, back and legs. Rutledge also noted that complainant's face was swollen on the left side.

Officer Elijah Harris testified that on October 31, 1987, he was sent to her home to speak to complainant. She was upset and crying. She informed him that she had been raped by three men at 76th and Union Streets. Harris called for additional officers. The officers proceeded to the building with complainant. As they approached the building, two men came across the street. Complainant identified one as McWilliams. McWilliams and Cornelius Black, a resident of the building, were taken into custody.

Detective Martin Tully testified that he took part in the investigation at 746 W. 77th Street. After speaking to other officers, complainant, and Rutledge, Tully proceeded to 7658 South Union Street. He found Hoskins hiding in the storage area in the basement under a pile of debris. Hoskins was placed under arrest. Tully remained in the house with complainant after the arrests took place. He walked through the house with complainant as she described what happened

in the various areas of the house. Tully recovered a black leather belt with a silver buckle from one of the bedrooms.

Complainant was taken to the emergency room at Little Company of Mary Hospital. Patricia Lee, a staff nurse, testified that she examined the victim. The complainant informed Lee that she had been assaulted both vaginally and orally by three assailants from midnight of October 30 until noon on October 31. When complainant disrobed, Lee observed that complainant had bruises on her left upper arm, left shoulder blade, and right thigh. Lee noted no bruises, abrasions or cuts about complainant's facial area. Lee was present as a physician took vaginal and oral specimens for a Vitullo kit.

The parties stipulated that if Christine Anderson, a Chicago police department serology expert, were called to testify she would state that she tested vaginal smears and swabs from the Vitullo kit taken at the hospital. The smear specimen marked vaginal tested positive for spermatozoa. The smear and swab marked oral tested negative for spermatozoa or sperm.

Cornelius Black testified for the defense that he lived at 7658 Union with Hoskins, Jones, McWilliams and Woods. On the day of the incident, he was in the upstairs area of the house. He testified that he saw Briscoll upstairs with a young lady. She was sitting on the end of the sofa. She was whimpering and quite likely was crying. Later, the girl was offered to Black for sex. At this time, she did not have clothes on and she was whimpering. Black did not see the young lady being forced by Briscoll to perform fellatio.

On rebuttal, Detective James Cloonan testified that when he spoke to Black, Black stated that Hoskins and the "other dude" came upstairs with a girl. The girl was nude, crying and asking for help. Black also told Cloonan that the girl was forced to perform fellatio with Briscoll.

William Woods testified for the defense that on the date of the incident, he lived at 7658 South Union on the first floor. At approximately 9 p.m., he heard someone knocking on the door and he started to answer it. A young lady came out of the basement and started walking towards him. She asked where the front door was and he told her. The young lady then let Hoskins into the house and went downstairs with Hoskins. (On rebuttal, complainant denied this.) Woods left the house at 10 p.m. and returned at 2 a.m. When he returned, there was no one in the living room. Woods identified complainant as being the young lady he saw that evening. He admitted that defense counsel had shown him a picture of complainant prior to his testimony.

In their appeal, defendants first contend that they were not

proved guilty of aggravated criminal sexual assault beyond a reasonable doubt. They maintain that complainant consented to the sexual acts which occurred that evening. Our review of the record reveals no support for defendants' contention.

■ A reviewing court will not reverse a conviction unless, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) It is the function of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852.) When there is a conflict in the testimony, it is the duty of the trier of fact to resolve the conflict and to determine which witnesses are credible. *People v. Rynberk* (1980), 92 Ill. App. 3d 112, 415 N.E.2d 1087.

■ Moreover, a conviction for aggravated criminal sexual assault, where defendant denies the charge, will be upheld when there is either some corroboration of the prosecuting witness or where that testimony is otherwise clear and convincing. (*People v. Geneva* (1990), 196 Ill. App. 3d 1017, 554 N.E.2d 556.) If the complainant's testimony is clear and convincing, her testimony alone will suffice to sustain the conviction. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019; *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 481 N.E.2d 883.) The testimony of the complaining witness, however, need not be perfect in order to be deemed clear and convincing. (*People v. Nelson* (1986), 148 Ill. App. 3d 811, 499 N.E.2d 1055; *People v. Powell* (1985), 138 Ill. App. 3d 150, 485 N.E.2d 560.) Any shortcomings in the complainant's testimony do not destroy her credibility, but merely go to the weight to be afforded the testimony by the trier of fact. *People v. Hutson* (1987), 153 Ill. App. 3d 1073, 506 N.E.2d 779.

■ Here, complainant's testimony was clear and convincing, and it was corroborated by other persuasive evidence. Complainant testified that she was dragged into a house by a man named Briscoll. While in the house, she was forced to perform fellatio on both Briscoll and Hoskins on several occasions. She stated that Briscoll and Hoskins hit her and beat her with a belt on her back, her arms and her legs. They gagged her mouth and tied her hands behind her back. Additionally, she was forced to have vaginal intercourse with McWilliams on two occasions. McWilliams slapped her several times. The ordeal continued for 12 hours. Two residents of the house, Black and

Woods, admitted that they had seen complainant at the house that evening. Black informed Detective Cloonan that he had witnessed one of the acts of fellatio which complainant had been forced to perform.

When complainant was allowed to leave, she immediately went home and told her fiance that she had been raped. He helped her to the bathtub and noticed bruises all over her body and saw that her face was swollen on the left side. When the police arrived, complainant told them she had been raped by three men and went with them to the scene of the incidents. Complainant identified defendants.

The nurse at the hospital to which complainant was taken observed bruises over complainant's body. A physician took slides and swabs from complainant's mouth and vagina. The specimen from complainant's vagina tested positive for spermatozoa.

In our view, complainant's testimony established that she had been sexually assaulted by defendants, and that this assault resulted in bodily harm. Complainant's testimony was corroborated by that of Rutledge, the physician, the nurse, and Officers Tully and Cloonan. Any conflicts with the testimony of Black and Woods were properly resolved by the trier of fact.

Defendants suggest that complainant was at the house that evening in order to exchange sex for cocaine. Defendants point out that complainant testified that at the point Hoskins first entered the bedroom, she was thinking about leaving. Our review of the record reveals no evidence which would support defendants' argument. The evidence shows only that the complainant was thinking of trying to escape, but was afraid of further beatings.

We believe that the trial court was in the best position to resolve any conflicts in the testimony and to draw proper inferences from that testimony. (*People v. Rynberk*, 92 Ill. App. 3d 112, 415 N.E.2d 1087.) The evidence amply supports defendants' convictions.

We next address each defendant's individual contentions. McWilliams contends that he was improperly held accountable for the acts of Hoskins under count VII of the indictment, and that he was improperly convicted of aggravated criminal sexual assault as he maintains that he did not inflict bodily harm on complainant. Similarly, Hoskins contends that he was improperly held accountable for the acts of McWilliams. Hoskins also contends that he did not inflict bodily harm on complainant.

With respect to McWilliams' contentions, we find that he was properly convicted of aggravated criminal sexual assault, but that he was improperly held accountable for certain acts perpetrated by Hoskins.

■ An individual commits aggravated criminal sexual assault when he

> "commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense:
>
> * * *
>
> (2) the accused caused bodily harm to the victim * * *." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a).)

Bodily harm for purposes of this provision of the statute defining aggravated criminal sexual assault should be defined the same as bodily harm for purposes of the battery statute. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—3(a)(1), 12—14(a)(2).) In interpreting the phrase "bodily harm," our supreme court has noted that although it may be difficult to articulate exactly what constitutes bodily harm, some sort of physical pain or damage to the body, such as lacerations, bruises or abrasions, whether temporary or permanent, is required. *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633. See also *People v. Wallace* (1986), 145 Ill. App. 3d 247, 495 N.E.2d 665; *People v. Boyer* (1985), 138 Ill. App. 3d 16, 485 N.E.2d 460.

■ McWilliams contends that there was no evidence connecting any action on his part to any "bodily harm" sustained by complainant. McWilliams notes that complainant testified that the beatings with the belt were to her back, arms and legs, and were inflicted by Hoskins and Briscoll, not by McWilliams. He further argues that the only allegation of physical injury attributable to his conduct was the allegation that he slapped complainant's face. McWilliams concludes that this allegation was insufficient to support a finding of bodily harm.

In support of this contention, McWilliams relies on this court's decision in *People v. Boyer*. In *Boyer*, the complainant testified that she had been slapped by the defendant and had experienced pain. Additionally, the complainant's mother testified that she had observed a bruise on complainant's leg. We found that because there was no testimony linking any physical harm to the assault, the evidence was insufficient to prove bodily harm. *People v. Boyer*, 138 Ill. App. 3d 16, 485 N.E.2d 460.

The situation under consideration here is distinguishable from that in *Boyer*. Complainant testified that McWilliams slapped her several times with an open hand, that he slapped her down onto the bed, and that he forcibly pulled her head back. Her fiance testified that he, when he saw complainant, noticed bruises on her back and swelling on the left side of her face. Thus, complainant presented specific testi-

mony linking a physical injury to McWilliams' actions.

While the emergency room nurse made no mention of facial injuries, nevertheless, it is the function of the trier of fact to resolve conflicts in testimony and to determine credibility. (*People v. Rynberk*, 92 Ill. App. 3d 112, 415 N.E.2d 1087.) This court will substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses only when the evidence is so improbable as to raise a question of reasonable doubt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) The evidence here is not so improbable as to raise such a question of reasonable doubt. The trier of fact heard the testimony of complainant, her fiance and the emergency room nurse. Further, a photograph depicting complainant's face as it was following the incident was entered into evidence. Thus, the trier of fact had sufficient evidence upon which to base its conclusion that McWilliams' actions resulted in bodily harm to complainant. We will not disturb that conclusion.

McWilliams further contends that the trial court improperly held him accountable for certain acts perpetrated by Hoskins. Defendants were found guilty of count VII of the indictment, which charged defendants with aggravated criminal sexual assault based upon the contact between Hoskins' penis and complainant's mouth. McWilliams alleges that he was improperly held accountable for these acts because he did not arrive at the house until approximately one hour after the encounter took place. McWilliams notes that there is no reference in the record to any repeat of this act after his arrival and concludes, therefore, that the conviction for count VII necessarily was based on the act occurring prior to his arrival.

■ An individual is legally accountable for the conduct of another if, either before or during commission of the offense and with the requisite intent, "he solicits, aids, abets, agrees or attempts to aid" the person in planning or committing the offense. (*People v. Martinez* (1980), 84 Ill. App. 3d 79, 405 N.E.2d 405; *People v. Ware* (1980), 82 Ill. App. 3d 297, 402 N.E.2d 762; Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) For purposes of accountability, "conduct" encompasses any criminal act done in furtherance of the planned and intended act. *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29.

■ It is true that one may aid and abet without actively participating in the offense. (*People v. Jones* (1989), 184 Ill. App. 3d 412, 541 N.E.2d 132; *People v. Bolden* (1978), 59 Ill. App. 3d 441, 375 N.E.2d 898.) Nonetheless, the State is unable to cite, and we are unable to find, any case in which a defendant has been held accountable for an offense which he did not contemplate, plan or solicit, and which

was committed in his absence. The application of accountability principles in such a situation is erroneous. (See *People v. McClelland* (1968), 96 Ill. App. 2d 410, 238 N.E.2d 597.) Here, there was no evidence of a common plan or scheme existing prior to McWilliams arrival at the scene. Moreover, McWilliams was not present during the act upon which Hoskins' conviction was based. Accordingly, McWilliams' accountability conviction must be reversed. See *People v. Ware*, 82 Ill. App. 3d 297, 402 N.E.2d 762.

■ Although we reverse McWilliams' accountability conviction, we need not remand his cause for resentencing. McWilliams was convicted of a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)) and, accordingly, could have received a sentence ranging from 6 years to 30 years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3)). Thus, the eight-year sentence which he received was well within the sentencing range, was not excessive, and in fact, was close to the minimum. Our review of the sentencing hearing reveals that the trial court's focus was on McWilliams' affirmative acts rather than on any passive role he may have had. The court accurately noted that McWilliams' actions were inhuman and degrading and said in particular that in reaching this conclusion, it was focusing on McWilliams' act of forcing complainant to have intercourse with him while she simultaneously was being forced to perform fellatio on Briscoll. Moreover, the trial court expressed surprise that McWilliams could claim he had not forced himself on complainant, when she had bruises, scars and marks. McWilliams' sentence reflects the trial court's careful consideration of those factors connected to McWilliams' actions that evening. We will not disturb the sentence.

■ We next address the portion of this appeal directed towards Hoskins. Hoskins contends that he was improperly found guilty of the "aggravated" version of count VII, which charged that he sexually assaulted complainant and in so doing caused her bodily harm. He argues that the beating with the belt occurred after the fellatio which forms the basis of that charge, and that the allegation he slapped her with an open hand was insufficient to support a finding of bodily harm.

Complainant indicated that the beatings with the belt did not occur until after Hoskins forced her to perform fellatio. Nevertheless, complainant testified that during this particular act of fellatio, Hoskins slapped her down onto the bed, hit her on the face, grabbed her by the hair, and hit her again. As discussed above, the trier of fact heard testimony from complainant, her fiance, and the emergency room nurse regarding complainant's injuries. Additionally, the

court saw a photograph which depicted complainant's face as it was immediately after the assault. In our judgment, the trier of fact was in a better position to assess the testimony and the evidence presented at trial, and to conclude whether the acts resulted in bodily harm. (*People v. Jarvis* (1987), 158 Ill. App. 3d 415, 511 N.E.2d 813.) We will not disturb that conclusion.

 Hoskins also contends that he was improperly held accountable under count I of the indictment for vaginal intercourse which occurred between McWilliams and complainant.

The testimony at trial established that McWilliams forced complainant to have vaginal intercourse with him on two occasions. On the first occasion, Hoskins and Briscoll were in the room. Briscoll invited McWilliams to have intercourse with complainant. Hoskins remained in the room, standing by while McWilliams forced complainant to have intercourse. At one point, Hoskins directed McWilliams not to ejaculate inside complainant because they "d[id]n't want to leave no traces."

The second occasion involving vaginal intercourse between McWilliams and complainant occurred several hours later. Complainant testified that in the intervening time, she was forced to have oral sex with Briscoll while Hoskins and McWilliams watched, and that she was forced to have oral sex with Briscoll while Hoskins watched. Hoskins then took complainant to the basement, where McWilliams' second act of intercourse with complainant occurred. Hoskins was not present in the room when McWilliams perpetrated this act.

A defendant can be held accountable for aggravated criminal sexual assault when he is aware that the commission of the offense is taking place even though there is no evidence he actually participated in the act. (*People v. Tyler* (1979), 78 Ill. 2d 193, 399 N.E.2d 975; *People v. Jones* (1989), 184 Ill. App. 3d 412, 541 N.E.2d 132.) Moreover, a defendant can be held accountable in such circumstances even if he is not in the room in which the act is occurring. (*People v. Tyler*, 78 Ill. 2d 193, 399 N.E.2d 975.) Accountability is appropriate when there is proof that a defendant solicited, aided, abetted, agreed or attempted to aid another in the commission of the offense. *People v. Kessler*, 57 Ill. 2d 493, 315 N.E.2d 29.

 Here, the facts show that Hoskins voluntarily attached himself to a group which had a criminal purpose. Hoskins had full knowledge of the group's design, and with the knowledge, he joined in the group's activities. He was physically present when McWilliams first forced complainant to have intercourse, and in fact, facilitated the commission of the crime by McWilliams. Later, Hoskins took com-

plainant to the basement, where McWilliams again forced her to have intercourse. Although Hoskins was not in the room, it is clear that he was aware of the commission of the offense, and again, facilitated its commission by taking complainant to the basement. Hoskins did nothing to disassociate himself from the activities of the group at any time during the 12 hours that complainant was at the house. In fact, Hoskins held complainant while Briscoll escaped. Hoskins later was apprehended hiding in the basement.

The evidence conclusively established that Hoskins saw the crime being committed, assisted in the commission of the crime, and did nothing to disassociate himself. (See *People v. Tyler*, 78 Ill. 2d 193, 399 N.E.2d 975.) Hoskins' argument that he erroneously was held accountable is without support in the record.

Hoskins maintains that even if he was properly found accountable for the conduct set forth in count I of the indictment, he was improperly held accountable for the "aggravated" version of that count. Hoskins argues that in order to impose accountability for the "aggravated" version of that count, the State had to prove beyond a reasonable doubt that Hoskins intended that the beating which occurred during the commission of the acts charged in count I facilitate a later episode of intercourse with McWilliams.

This argument is without merit. Defendant cites no case which would support his position, and our research of the law of accountability reveals no such requirement. As noted above, the trial court properly found that McWilliams had sexually assaulted complainant, and that in so doing, had caused her bodily harm. As just discussed, the trial court properly found Hoskins accountable for McWilliams' actions. Thus, Hoskins was properly convicted of aggravated criminal sexual assault, as charged in count I of the indictment.

In sum, the judgment of conviction of the circuit court of Cook County against Hoskins for aggravated criminal assault, both for causing bodily harm and under accountability principles, are affirmed. The judgment of conviction against McWilliams for aggravated criminal sexual assault by causing bodily harm is affirmed; the judgment of conviction against McWilliams under accountability principles is reversed. The sentence imposed on McWilliams is upheld.

Affirmed in part and reversed in part.

LaPORTA, P.J., and RAKOWSKI, J., concur.