THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT ANDERSEN *et al.*, Defendants-Appellants.

Second District   No. 2—89—1100

Opinion filed November 24, 1992.

DUNN, J., dissenting.

G. Joseph Weller and Marlene Kamish, both of State Appellate Defender's Office, of Elgin, for appellants.

Charles R. Hartman, State's Attorney, of Freeport, and Deanne M. Tomse, of Chapman & Cutler, of Chicago (William L. Browers, John X. Breslin, and Norbert J. Goetten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

After a jury trial, defendants, Robert and Stacie Andersen, were each convicted of criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)) and aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16). On appeal, the defendants

raise five issues. They argue: (1) that the evidence was insufficient to prove them guilty beyond a reasonable doubt; (2) that the convictions of criminal sexual assault are void because the section under which they were charged was not enacted into law; (3) that the State failed to prove the elements of criminal sexual assault; (4) that Stacie's conviction of aggravated criminal sexual abuse must be reversed because she is not five years older than the complainant; and (5) that they were denied the effective assistance of counsel. We affirm in part and reverse in part.

At trial, the complainant, C.G., testified that she and her adoptive mother went to Freeport, Illinois, to visit her aunt. Her mother left her at the defendants' home at approximately 11 a.m. on Saturday, February 25, 1989. The defendant Stacie Andersen is C.G.'s sister, and the defendant Robert Andersen is Stacie's husband. C.G. was 15 years old at the time of the incident.

According to C.G.'s testimony, at about 7 p.m., Robert, Stacie and C.G. watched a movie on television in the living room. When the movie was over, Stacie and Robert went into the kitchen to talk. Stacie came back into the living room and told C.G. that it was Robert's fantasy to have two women in bed and that Robert wanted C.G. to be a part of that fantasy. C.G. testified that she agreed even though she did not want to do it.

C.G. further testified that she, Stacie and Robert got undressed in the kitchen. Robert took two pictures of Stacie and C.G. standing naked in the kitchen. Then Robert wanted Stacie and C.G. to take a shower together. Stacie and C.G. got into the shower and began washing each other. Robert continued taking pictures with a Polaroid camera. Five to ten minutes later Robert got into the shower with C.G., and Stacie began taking pictures of Robert and C.G. in the shower. Robert got an erection and instructed C.G. to wash his penis. When C.G. got out of the shower, Stacie got back in, and C.G. began taking pictures of Robert and Stacie together in the shower. After leaving the bathroom, they went into the bedroom.

Stacie had the camera in her hand and was standing at the end of the bed. Robert was lying naked on the waterbed. They asked C.G. if she was going to get into bed with Robert. C.G. replied, "I guess." Stacie then instructed C.G. to hurry up, that she was not going to wait around, and that she just wanted "to get this done and over with."

C.G. got into the bed with Robert. He pulled C.G. over to him and started fondling her breasts. Stacie was at the end of the bed

taking pictures. Robert and C.G. started kissing, and Stacie went into the kitchen, crying. She returned shortly. Robert then put his finger in C.G.'s vagina. Then they switched positions so that C.G. was on her back. Robert put his penis into her vagina, pulled his penis out and put a condom on, then put his penis back inside C.G.'s vagina and ejaculated. Stacie continued to take pictures while C.G. and Robert had intercourse.

After the incident, they all washed, got dressed, and watched the Playboy channel. After a short while, Robert and Stacie decided to go to sleep. C.G. stayed up and watched television for a while. She eventually fell asleep on the couch.

C.G. testified that no one else was at Robert and Stacie's home during the incident. She testified that Robert and Stacie were taking care of her while her mother was at her aunt's house for the night. Also, C.G. identified a group of photographs as the photographs she had taken that night at Robert and Stacie's house. C.G. stated that there were other pictures taken that night, but Stacie told C.G. over the phone shortly after the incident she had destroyed them.

C.G. also testified that sometime in August 1988 she had occasion to be at Robert and Stacie's house. C.G., Robert, Stacie and Aaron Murphy, a friend of Robert and Stacie's, played strip poker and then sat around naked and watched "pornos." She also testified that she had taken pictures of Robert and Stacie on December 27, 1988.

On cross-examination, C.G. testified that on the night of February 25, she, Robert and Stacie looked at the pictures taken earlier that night. C.G. also admitted that she smoked marijuana that afternoon on the front porch of Robert and Stacie's house, with her sister Lyn. C.G. admitted that on a number of occasions she had told Stacie that she disliked Robert. She further admitted that she wished Robert and Stacie had not married.

Officer Joseph LaBarge testified that he had been employed as a State police officer for 21 years. He was assigned to C.G.'s case. After obtaining a statement from C.G., Officer LaBarge obtained a warrant to search the Andersens' home. Both Robert and Stacie were at home when the warrant was executed on April 12, 1989. At trial, Officer LaBarge identified photographs of Robert and Stacie involved in sexual intercourse and oral sex; he had recovered them from a tan check box in a closet in Robert and Stacie's bedroom. He also identified a Polaroid One-step 600 camera and a box

of condoms that he had recovered from the Andersen home. He testified that he did not find any photographs of C.G.

Officer LaBarge further testified that he spoke with Stacie at her home after Robert was taken to the Freeport police station. He testified that Stacie told him there had been more photographs, but that she had destroyed them.

The parties stipulated that Robert Andersen's date of birth is June 14, 1962, Stacie Andersen's date of birth is May 27, 1968, and the date of birth of C.G. is April 21, 1973.

Robert Andersen testified for the defense. He stated that C.G. had visited his wife and him four to six times before the December 27, 1988, visit. Not all of these visits extended overnight. Robert's relationship with C.G. was "not that great." When C.G. would come to the house, she and Robert would argue and then not speak to one another. C.G. often asked for alcohol, which Robert stated he refused to provide.

Robert testified that on December 27, 1988, C.G. arrived around 5:30 p.m. Robert, Stacie, C.G. and Aaron Murphy were present that evening. Robert and Aaron left the house to pick up a pizza. When they returned, the four of them ate the pizza in the living room. After dinner they played a card game called "skippo" on the living room floor. Robert stated no sexual activity occurred that night between Robert, Stacie and C.G.

Robert stated that the photos of him and his wife engaged in intercourse and oral sex were taken on September 12, 1988, by Aaron Murphy. Robert stated that those pictures were never shown to C.G. Robert identified a second group of photos as those taken by Aaron Murphy approximately six weeks later. Robert stated that he had never taken any photos of C.G. However, Robert stated that C.G. may have seen the photographs because on the morning of February 26 the box in which he kept the photos had been moved.

Robert stated that he recalled being in the shower with his wife Stacie on the night of February 25; she was ill. Robert testified that Stacie's temperature was 103 degrees. She had slipped in the tub, so he decided to help her bathe. He stated that the door to the bathroom was locked, and C.G. was on the couch in the living room watching television.

Stacie Andersen also testified for the defense. She stated that the photographs of her and Robert in question were taken by Aaron Murphy, not C.G. She testified that she was not feeling well on February 25, and that she got progressively worse as the day went on. Stacie also denied that any photographs were taken on Decem-

ber 27, 1988. She stated that she, Robert, C.G. and Aaron Murphy ate pizza and played "skippo" that evening.

Stacie stated that C.G. did not get along with Robert. C.G. would often bring up the fact that she did not like Robert. In March 1989, Stacie had a phone conversation with C.G. in which they argued about divorce. Stacie denied telling C.G. that she destroyed any photographs. She also denied telling Officer LaBarge that they had ever played strip poker and that they took off all their clothes while C.G. and Aaron Murphy were present. She denied telling Officer LaBarge that she, Robert and C.G. engaged in intercourse and oral sex on February 25, 1989.

Aaron Murphy testified that he was a good friend of Robert and Stacie. He testified that he had been at the Andersens on December 27, 1988. That was the first time he met C.G. He stated that they ate pizza and played "skippo." There was no sexual activity nor were any photographs taken. Aaron also testified that he was the photographer for the photographs of the Andersens engaged in intercourse and oral sex.

On rebuttal, the State called C.G. to the stand. She again testified that there were pictures taken of her on December 27, 1988. She identified a picture, not previously introduced, that allegedly was taken in Robert and Stacie's bedroom. In the photograph, C.G. is standing on the bed wearing only a pair of bikini panties. C.G. testified that she forgot about the photograph until the trial began. She said that the picture was taken at the Andersens' house on December 27, 1988. Robert told C.G. to keep the photograph, but not to show anyone. She testified that after keeping the photo for approximately one week, she gave it to her boyfriend.

Officer LaBarge was also called to testify on rebuttal. He stated that Stacie told him that when C.G. was visiting their home in Freeport, there had been pictures taken of vaginal and oral intercourse, as well as pictures of C.G. He also testified that Stacie claimed to have destroyed the pictures of C.G. because she was embarrassed and did not want to get into trouble. Stacie informed Officer LaBarge that she, Robert and Aaron Murphy played strip poker with C.G., which resulted in everyone taking off all his clothing. Stacie stated that she did not want to participate, because C.G. was too young. However, Robert had told Stacie that he loved her and would not do anything to get them into trouble. Officer LaBarge testified that at the time of her statement Stacie was very upset, but not hysterical. On rebuttal, Stacie again denied making the reported statements to Officer LaBarge.

Robert Andersen testified on rebuttal that he was not present when the photo of C.G. standing on the waterbed in his and Stacie's bedroom was taken.

The jury returned guilty verdicts, and the court entered judgment on both counts against both defendants. The defendants brought this appeal.

The defendants' first argument on appeal is that the evidence was insufficient to prove them guilty beyond a reasonable doubt. In cases where a sex offense is charged, as in other cases, the appropriate standard to review the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Schott* (1991), 145 Ill. 2d 188, 206.

When there is conflicting testimony, the resolution of factual disputes and the assessment of the credibility of the witnesses are for the trier of fact. (*People v. Haun* (1991), 221 Ill. App. 3d 164, 174.) The reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt of a defendant's guilt remains. *People v. Roy* (1990), 201 Ill. App. 3d 166, 185.

■■ The jury considered C.G.'s thorough testimony regarding the events of February 25. That testimony was strengthened by testimony of Officer LaBarge and the photographic evidence. Despite the conflicts in the record, after considering the evidence in this case in a light most favorable to the prosecution, we do not find that it is so unsatisfactory or improbable that no reasonable jury could have found proof of the defendants' guilt beyond a reasonable doubt.

The defendants' second issue on appeal concerns whether the charge against them for criminal sexual assault was sufficient. The defendants were charged under section 12—13(a)(3) of the Criminal Code of 1961. That section provides, in pertinent part, as follows:

"(a) The accused commits criminal sexual assault if he or she:

\* \* \*

(3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member." Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(3).

The informations filed against the defendants charged, based on events of February 25, 1989, that as "a person *responsible for the*

*care of [C.G.]"* (emphasis added), each defendant committed the offense of criminal sexual assault in violation of section 12—13(a)(3). The information did not allege that the defendants were family members of the accused, nor are the defendants family members as defined by the relevant statute (see Ill. Rev. Stat. 1991, ch. 38, par. 12—12(c)).

The defendants argue that the language used by the State in these count II charges was taken from an amendment to section 12—13(a)(3) which never became effective. They correctly observe that the legislature repealed the amendment that added language addressing responsibility for care of a complainant, before that amendment's effective date. The defendants assert that the language used by the State in count II does not set forth the elements of section 12—13(a)(3) without the amendment and, thus, that the charging instrument was insufficient to inform them of the charge against them.

The State concedes that the proposed amendment to section 12—13(a)(3) adding the words "persons responsible for the child's welfare" never became effective. However, the State argues that although the words "persons responsible for" do not appear in the statute, that language is encompassed by the language set forth in section 12—13(a)(4), making the error harmless. That section reads:

"(a) The accused commits criminal sexual assault if he or she:

* * *

(4) commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim." Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(4).

When attacked for the first time on appeal, an information or indictment is considered sufficient if it apprises the accused of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29; *People v. Boland* (1990), 205 Ill. App. 3d 1009, 1017.) In other words, a defective charge may be held to be sufficient on appeal if the defendant has not been prejudiced thereby in his or her defense. See *People v. Waelterman* (1983), 112 Ill. App. 3d 483, 485.

■ Here, the State charged the defendants under amendatory language of the Criminal Code of 1961 which never became effective. The State's charge failed to allege the necessary elements of the Criminal Code section cited or the Criminal Code section which the State now argues would apply. Based on this record, we cannot say that the informations here were sufficient to apprise the defendants of the offense with which they were charged.

We note that the State did not merely incorrectly cite the section of the statute under which it wanted to proceed. Rather, it charged the defendants under an amendment to the statute that never became effective. The charges made were sufficient under no Criminal Code provision. In addition, the record reveals that both the State and the defense treated the charges as based upon a violation of the amended version of section 12—13(a)(3) that never became effective.

Section 12—13(a)(4), under which the State might have proceeded, requires that the victim be between the ages of 13 and 18 and that the accused be at least 17 years of age. The amendment to section 12—13(a)(3), under which the charges here were made, merely required the victim be under the age of 18 at the time of the incident. During closing arguments, the State repeatedly referred to the fact that it only needed to prove the victim was under 18 years of age and that the accuseds were "persons responsible" for her care. In fact, the trial court instructed the jury as follows:

"A person commits the offense of criminal sexual assault when he or she who is [sic] a person responsible for the child's welfare and [sic] commits an act of sexual penetration with a victim who is under eighteen years of age when the act was committed. To sustain the charge of criminal sexual assault the State must prove the following propositions. First, that the defendant or one for whose conduct he or she is legally responsible [sic] committed an act of sexual penetration upon [C.G] and second [sic] that [C.G.] was under eighteen years of age when the act was committed and third [sic] that the defendant or one for whose conduct he or she was legally responsible was a person responsible for the child's welfare."

The record is clear that the defendants were not only charged under a section of the Criminal Code which never became law, but also that the jury was instructed on that offense. We cannot say that no prejudice resulted from the State's error. We, thus, reverse the defendants' count II convictions of criminal sexual assault. Ac-

cordingly, we need not address defendants' third contention on appeal that they were not proved to be "persons responsible for the care of C.G."

Next, the defendants argue that Stacie's conviction of aggravated criminal sexual abuse must be reversed because she is not five years older than C.G., as required by section 12—16(d) of the Criminal Code. (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(d).) That section provides as follows:

> "(d) The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." Ill. Rev. Stat. 1991, ch. 38, par. 12—16(d).

Stacie, who at the time of the incident was 19 years old, is approximately 4 years and 11 months older than C.G. The State argues that Stacie's age is irrelevant because she was tried under a theory of accountability.

A defendant is legally accountable for the conduct of another when:

> "(c) [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).)

Accountability is not a separate offense but merely an alternative manner of proving a defendant guilty of the substantive offense. *People v. Doss* (1981), 99 Ill. App. 3d 1026, 1029.

Although sexual assault statutes now provide for conviction of either males or females (see Ill. Rev. Stat. 1991, ch. 38, pars. 12—13, 12—14, 12—15, 12—16), under earlier statutes, only a male could be directly guilty; females could be found guilty of rape, but as an accessory, an aider or an abettor. (See *People v. Medrano* (1974), 24 Ill. App. 3d 429, 430; *People v. Trumbley* (1911), 252 Ill. 29, 36.) In discussing a female's conviction of a sexual offense on a theory of accountability, our supreme court has stated that it is not a question of ability or want of ability to do the act which the statute declares to be a crime, but whether the act, if done, would be a crime. (*Trumbley*, 252 Ill. at 33.) In *Trumbley*, the court found that a female defendant accused of rape but not charged to be 17 years of age or older, as the statute required of the males it covered, could not be convicted.

The court acknowledged that if a female defendant were properly charged as required by the statute, she could be convicted under a theory of accountability. (*Trumbley*, 252 Ill. at 34.) However, the court stated that "[w]e cannot attribute to the General Assembly an intention to punish one as an accessory to an act which, if committed by such person, would not be a crime." (*Trumbley*, 252 Ill. at 33.) The court noted that if the female defendant had been male, she could not be convicted because the indictment did not show that she satisfied the statute's age requirement. 252 Ill. at 33, 36.

■ This case is directly analogous to *Trumbley*. Under that case, Stacie cannot be convicted, even through accountability, for an act that the General Assembly did not define as a crime if she had committed it herself. Stacie Andersen's conviction of aggravated criminal sexual abuse is reversed.

The defendants' last issue on appeal is whether they were denied the effective assistance of counsel. In light of the preceding portion of our decision, we need only review this issue as it pertains to Robert.

The standard used to determine whether a defendant has been denied the effective assistance of counsel was set out by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Unless a defendant makes both showings, he cannot prevail on his claim of ineffective assistance. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In deciding a claim of ineffective assistance of counsel, a court may advance directly to the second part of the *Strickland* test, and, if it finds that the defendant was not prejudiced by the allegedly incompetent conduct of his attorney, the court may rule on the claim without first finding that the attorney's conduct constituted less than reasonably effective assistance. *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 397.

Robert argues he was denied the effective assistance of counsel because counsel: (1) failed to move to suppress photographs of him and Stacie engaged in intercourse; (2) failed to investigate the background of C.G. to provide evidence of her previous allegations and sexual charges; (3) failed to ask C.G. why no family members came

forward on her behalf and why she delayed reporting the incident; (4) failed to call the jury's attention to the fact that although C.G. claimed Stacie informed her in March that she had destroyed the photographs, a search warrant was executed in April to locate lewd pictures of a minor child; and (5) failed to file a post-trial motion. We note that the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 548.) Defendant has failed to show such prejudice.

Robert's ineffective assistance argument emphasizes counsel's failure to seek suppression. He argues that suppression would have been granted because the items seized, including the camera, the box of condoms and the photos, were outside the scope of the warrant. We disagree.

■ The items now at issue were found in plain view, by the police during their search for photos of C.G. C.G. had told the police that she took photos of the defendants having sexual and oral intercourse. She also stated that the photos were taken with a Polaroid One-step camera and that Robert Andersen had used a condom. Given C.G.'s claims, the evidence seized was of an incriminating nature. Under the plain-view doctrine, an officer executing a valid search warrant may seize items not listed in the warrant if such items are of an apparently incriminating nature. (*People v. Stewart* (1984), 105 Ill. 2d 22, 52.) We find that Robert suffered no prejudice by defense counsel's failure to file a motion to suppress.

■ We also find no showing of prejudice on Robert's additional claims of ineffective assistance. Regarding Robert's reliance upon counsel's failure to further investigate C.G.'s possible prior allegations of sexual misconduct, we note that the State filed and the court granted a motion *in limine* to prevent the defense from attempting to admit such evidence. With reference to the court's finding of admissibility, we find that Robert suffered no prejudice as a result of defense counsel's failure to further investigate.

■ Third, regarding Robert's charge that defense counsel failed to question C.G. regarding why no family members came forward to testify on her behalf and why she delayed reporting the incident, we note the following. During his cross-examination of her on rebuttal, defense counsel did question C.G. about her delay in reporting the incident. Also, the record reveals no reason why it was necessary for the State to call C.G.'s family members as post-occurrence witnesses, and Robert has not demonstrated that

defense counsel's failure to question C.G. about her family members created prejudice.

■■ On Robert's remaining arguments, we note that the facts that the police executed a warrant to search for the photos of C.G., even though C.G. had informed them Stacie claimed to have destroyed the pictures, were brought out at trial. We fail to see how further "exploration" on this matter would have changed the outcome of the case. Similarly, we find no showing of prejudice in defense counsel's failure to file a post-trial motion. The issues raised in this appeal were not waived by failure to file a post-trial motion, and the defendant has failed to demonstrate any prejudice caused as a result of defense counsel's failure to file such a motion.

Based on the foregoing, the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

BOWMAN, J., concurs.

JUSTICE DUNN, dissenting:

I dissent in the majority holding that Stacie's conviction of aggravated criminal sexual abuse must be reversed. The authority the majority cites for this erroneous conclusion is *People v. Trumbley* (1911), 252 Ill. 29, 36. If the authority cited by the majority had precedential value, I would then have no quarrel with their conclusion. However, it is quite clear that the expression of opinion in the turn-of-the-century *Trumbley* case was mere *obiter dictum.* The only issue involved there was the sufficiency of the indictment. The expression of opinion was based on assumed facts not present in the case.

In my view, therefore, *Trumbley* is not binding authority. Moreover, the opinion gratuitously expressed by the court and adopted by the majority here was grounded on a faulty analysis.

The State argues in this appeal that Stacie's age is irrelevant because she was tried under a theory of accountability. I agree.

A defendant is legally accountable for the conduct of another when:

"(c) [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).)

Accountability is not a separate offense but merely an alternative manner of proving a defendant guilty of the substantive offense. *People v. Doss* (1981), 99 Ill. App. 3d 1026, 1029.

One may aid and abet without actually participating in the offense. (*People v. Hoskins* (1990), 203 Ill. App. 3d 45, 53; *People v. Jones* (1989), 184 Ill. App. 3d 412, 431.) A defendant may be held accountable for rape when he or she was aware that the commission of the offense was taking place even though there is no evidence he or she actually participated in the act. *People v. Jones*, 184 Ill. App. 3d at 431.

Because accountability is an alternative manner of proving a defendant guilty of a substantive offense, it is not necessary to prove all elements of that substantive offense. In the present case, the State need only prove Stacie Andersen aided and abetted her husband in the offense charged. It was not necessary for the State to prove Stacie committed the act itself as defined by the statute. It is the criminal act of her husband for which she is being held accountable. Her conviction of aggravated criminal sexual abuse should be affirmed.