THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT GERALD SHAW, Defendant-Appellant.

Second District   No. 2—91—1354

Opinion filed March 14, 1994.

G. Joseph Weller, of State Appellate Defender's Office, and Sherry R. Silvern, both of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon, and James W. Ackerman, of Ackerman Law Office, of Springfield (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Robert Gerald Shaw, was convicted of battery and aggravated battery. He was sentenced to five years in prison on the aggravated battery conviction. On appeal defendant asserts the trial court abused its discretion when it denied a request from the jury to see a copy of the trial transcript. We affirm.

The trial began on October 1, 1991. Elmer Shaw, the defendant's father, testified at trial that he is a 74-year-old retired farmer. Around 4 p.m. on May 11, 1991, he was in his machine shed after putting away a couple of tractors. The defendant came into the shed and slashed at Elmer's face with a butcher knife, saying, "You lied. You lied." Elmer grabbed the knife away from the defendant, but not before defendant nicked him on the chin. Although defendant tried to shut him in the shed by slamming the door, Elmer was able to get out. He headed toward the house, followed by defendant, who knocked

him down, saying, "Give me my knife." According to Elmer, the defendant proceeded to hit him, push him, and strike him with some wind chimes which were hanging from the eaves of the house. Elmer reached inside the porch for his cane, but defendant got the cane away from him. Elmer then managed to get inside the house and close the door. Defendant hit the door and then went back to his nearby trailer. Bradley Shaw, the defendant's son, related a conversation he had with his father in mid-April. The defendant had said Elmer was cheating him, that he should farm Elmer's farm, and that if he was not allowed to farm the farm he would kill Elmer.

Defendant testified on his own behalf that on May 11 he had used a knife to cut cardboard so he could lie down on it while working on his car. He had the knife in his left hand, carrying it down by his leg, when he followed his father into the machine shed so he could ask him about a call to the sheriff a month earlier. Elmer grabbed the knife, waved it in defendant's face and said, "I got your knife. You want to fight?" According to defendant, Elmer then pushed him; he knocked Elmer's hat off; and Elmer hit him in the face and knocked his glasses off. Elmer ran toward the house, and the defendant followed, telling Elmer to give him back the knife. When they reached the porch, defendant grabbed Elmer's hand, but Elmer grabbed his cane and hit defendant. Defendant then went first to the shed to retrieve his glasses and then into his trailer.

On cross-examination defendant indicated that he believed Elmer had cheated him out of some money and that he felt some anger because Elmer would not allow him to farm the land. He responded that he never threatened or cut Elmer on May 11, but he had noticed a mark on his father's chin when he went into the machine shed to talk to him. .

In rebuttal, Bradley Shaw testified again regarding defendant's threat to Elmer. He also claimed the defendant had threatened Elmer on five or six other, previous occasions.

The trial continued the next day, October 2, with the instruction conference, closing argument, and jury instructions by the court. The jury began deliberating at 10:34 a.m. At 11:40, the jury sent out a note asking if it could vote guilty on one charge and "deadlocked" on the other. Without objection, the court first informed the jury that it was possible and then read the instruction to be given to deadlocked juries, pursuant to *People v. Prim* (1972), 53 Ill. 2d 62, 75-76. The jury resumed deliberations. At 1 p.m., it sent out another note, this time asking if it could have a copy of the testimony. Again without objection, the court wrote to the jury that the transcript of the testimony was not available. At 1:50 p.m. the jury returned verdicts

of guilty on both battery and aggravated battery. Following sentencing, defendant's motions for a new trial and to reduce sentence were denied, and this appeal followed.

Defendant attacks the trial court's handling of the jury's request for a copy of the testimony. He insists that, instead of merely responding that the transcript was not available, the court should have, at the very least, tried to find out what specific testimony was sought by the jury. After examining the record, we conclude, as urged by the State, that defendant waived any error that may have occurred.

To preserve an issue for appeal, both a trial objection and a written post-trial motion raising the issue are required. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 17; *People v. Enoch* (1988), 122 Ill. 2d 176, 185-87; *People v. McCaster* (1993), 239 Ill. App. 3d 753, 759.) The failure to preserve properly an issue at trial results in waiver of that issue on review. (*Pecoraro*, 144 Ill. 2d at 17.) In this case both defense counsel and the State's Attorney were present when the court read the jury's note into the record. The court then said of the note: "I am going to submit in response to that request—unless there is any objection from either one of you I am going to inform them that there is—that the transcript is not available. The transcript of the testimony is not available." Defense counsel replied, "That's fine." Hence, despite the trial court's express allowance for them, no objections were forthcoming. On the contrary, defense counsel indicated that the course of action favored by the court was acceptable. When a party agrees to proceed in a given manner, he is in no position to later claim that he was prejudiced by so proceeding. (*People v. Jackson* (1991), 145 Ill. 2d 43, 94.) Further, we have examined defendant's motion for a new trial and find that, although numerous errors are alleged, no reference is made to the disposition of the jury's request. Absent both a trial objection and a post-trial motion, defendant has waived the issue he now raises.

Even if we were to review the issue, defendant would not prevail. The decision whether to allow or refuse a jury's request for transcripts is a matter within the sound discretion of the trial court, whose determination will be set aside only if it reflects an abuse of that discretion. (*People v. Pierce* (1974), 56 Ill. 2d 361, 363-64.) The *Pierce* court reasoned that the trial court is more knowledgeable about the charges against the accused, the witnesses who have testified, and the evidence that has been admitted and is, therefore, in a better position to determine whether such a request will help or hinder jury deliberations. We find no abuse of discretion here.

Defendant cites to *People v. Queen* (1974), 56 Ill. 2d 560, 565-66,

*People v. Autman* (1974), 58 Ill. 2d 171, 175-77, *People v. Bryant* (1988), 176 Ill. App. 3d 809, 812-13, and *People v. Jackson* (1975), 26 Ill. App. 3d 618, 627-29, a line of cases in which the trial courts had denied jury requests to see or hear trial testimony. In each instance the reviewing court examined the lower court's response and essentially found that the trial court had refused to exercise discretion in the erroneous belief that it had no discretion as to the request to review trial testimony. In contrast, we are persuaded by the record in this case that the trial court knew it was expected to, and in fact did, exercise discretion. The court told defense counsel and the State's Attorney, both of whom were present, what its reply was going to be "unless there is any objection from either one of you." As we read his remark, the trial judge was well aware that objections were a possibility. Thus, he allowed for arguments on those objections before he made his decision. Absent objections, he exercised his discretion and told the jury the transcript was not available.

Defendant is correct that the trial court's reply in *Bryant*, that "[t]here's not a transcript available for you," is very similar to the language used by the court in this case. (*Bryant*, 176 Ill. App. 3d at 812.) However, we note that the record in *Bryant*, unlike the record here, did not clearly show that either Bryant or his counsel was present when the jury request was received and answered, or that the trial court specifically invited possible objections from defense counsel. In addition, the response here is also similar to that in *People v. Olinger* (1986), 112 Ill. 2d 324, 349, where the trial court wrote to the jury, "No, the transcripts are not available. You must rely on your memories." The record reflected the fact, but not the substance, of a discussion between the court, the State, and counsel for the codefendants. It also reflected the trial court's notation of defendant's objection to the failure to provide transcripts to the jury. Believing that the trial court's remarks did not evidence a failure to exercise discretion, the *Olinger* court found no error in the refusal to send transcripts to the jury. In sum, when measured against the circumstances of this case, the authorities cited by defendant are not persuasive on the issue of the trial court's perception of its own discretion.

We find this case far more akin to *People v. McKay* (1985), 138 Ill. App. 3d 446, where this court found no abuse of discretion in the trial court's denial of a jury request for a transcript of the testimony of a defense witness. We considered the following factors: the witness had testified only the day before the jury began deliberations, the trial was not complex and had only one seriously contested issue, the witness' testimony was not complex, and the jury had begun

deliberations just a matter of hours before requesting the transcript. The court in *People v. McCaster* (1993), 239 Ill. App. 3d 753, 760, likewise found no abuse of discretion when the trial court denied the jury's transcript request, even though defense counsel asked the court to reconsider its decision and to question the jury about what portions of the transcript were sought. The *McCaster* court noted that the trial was relatively short, lasting less than two full days, and the evidence was straightforward. The court did not believe a copy of the transcript was vital to deliberations.

The circumstances of the present case are markedly similar to those in *McKay* and *McCaster*. The trial was even shorter than the trial in *McCaster* since the testimony was completed in one day. The jury began deliberating the very next morning, thus minimizing the chance that the jurors might not be able to recall the testimony. This was particularly true since the trial was not complex and the evidence was direct and uncomplicated. The only matter really at issue was the credibility of the witnesses. Only the day before, however, the jury had heard the testimony, witnessed the demeanor of the witnesses, and was qualified to determine the credibility of their testimony (see *People v. Bibbs* (1981), 101 Ill. App. 3d 892, 899). Like the *McCaster* court, on these facts we do not believe the jury really needed or would have been helped by a copy of the transcript, particularly since, like the jury in *McKay*, it asked for it less than three hours after deliberations began. Accordingly, the trial court did not abuse its discretion in refusing the jury's request for a copy of the testimony.

In light of our conclusion that the transcript would have been of little assistance to the jury, we need not further consider defendant's suggestion that the trial court's action constituted plain error. Defendant's alternative proposition, that defense counsel's failure to preserve the issue for review constituted ineffective assistance of counsel, is not persuasive, either.

To prevail on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that he was so prejudiced as a result of that deficiency that he did not have a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Page* (1993), 155 Ill. 2d 232, 260.) A court deciding a claim of ineffective assistance of counsel may advance directly to the second prong of the *Strickland* test and, if it finds that defendant was not prejudiced, may rule on the constitutional claim without addressing the question of whether counsel rendered effective assistance. (*People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 397; *People v. Andersen* (1992), 237 Ill. App. 3d 367,

378.) We have decided that there would have been little, if any, benefit in providing the transcript to the jury. Considering the nature of his trial as we described it above, defendant has not shown that it would likely have turned out any different if the trial court had granted the jury's request. Absent prejudice, defendant was not denied the effective assistance of counsel.

For the reasons stated above, defendant's conviction is affirmed.

Affirmed.

McLAREN and COLWELL, JJ., concur.